**CITY OF DETROIT, a Michigan Municipal Corporation, and the Detroit Water and Sewerage Department, Plaintiff,**

v.

**CITY OF HIGHLAND PARK, Defendant,**

v.

**CHRYSLER CORPORATION,
a Delaware Corporation,
Intervenor Herein.**

Civ. A. No. 92–76775.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 1995.

88

Carl Rashid, Jr., James J. Giszczak, Detroit, MI, for Chrysler Corp.

Richard J. McClear, Darryl F. Alexander, Robert C. Walter, Detroit, MI, for City of Detroit.

Lolanda R. Johnson, Herbert A. Sanders, Highland Park, MI, for defendant.

George G. Newman, Detroit, MI, special counsel.

### Opinion Regarding Plaintiff's Proposed Order

FEIKENS, District Judge.

### I. Background

This case is the latest in a line of waste water rate-making disputes in the City of Detroit (Detroit) metropolitan area. I first confronted this matter in 1979 when I issued an order placing all rate-making challenges under this court's continuing jurisdiction. Order Regarding Rate Challenges, October 4, 1979 *United States v. State of Michigan,* Civil Action 77–77100. I entered that Order after receiving the Report and Recommendation of the Masters that I appointed to weigh the propriety and fairness of rate-making procedures in the Detroit metropolitan area. Report and Recommendation of the Masters, May 1, 1978 77–77100. These actions were necessary to insure that the parties complied with the Clean Water Act, 33 United States Code (U.S.C.) § 1251 *et seq.* I now oversee Detroit's provision of waste water treatment services to over one hundred communities in Southeastern Michigan.

Some of the communities serviced by Detroit have significant bad debt problems. Detroit's procedure for handling this bad debt is closely scrutinized. Currently, this Court is attempting to resolve a dispute between Detroit and Wayne, Macomb and Oakland Counties over Detroit's practice of spreading bad debt over the entire waste water system. Although that matter is still pending, it is likely that Detroit will have to reimburse communities that were forced to pay for the bad debt of others. In light of this, Detroit is under pressure to improve its collection methods and pursue the collection of bad debts.

At the core of the present dispute is Detroit's furnishing of vital waste water services to the City of Highland Park (Highland Park) pursuant to a June 8, 1983 contract. Highland Park has failed to pay for these benefits on a regular basis, despite the fact that it bills and collects from its residents for these services. Due to this failure, Detroit sued Highland Park in order to compel payment of this bad debt. Highland Park did not respond to this action. In view of the large amount of money involved, I met with the Highland Park attorneys and asked if they had any objections to the entry of judgment against Highland Park. None were forthcoming, so on June 28, 1993 I entered a default judgment against defendant in the amount of eight million, ninety-three thousand, eight hundred sixty-five dollars and two cents ($8,093,865.02). That judgment remains unsatisfied. Subsequent to the entry of that judgment, I entered a consent judgment against defendant for additional monies owed plaintiff for provision of waste water services in the amount of two million, five hundred five thousand, two hundred ten dollars and forty-four cents ($2,505,210.44) on February 21, 1995. *City of Detroit v. City of Highland Park,* Civil Action No. 94–73135. Neither defendant nor Chrysler Corporation (Chrysler), intervenor herein, contest the validity of these judgments. Thus, it is beyond dispute that Highland Park currently owes Detroit ten million, five hundred ninety-nine thousand, seventy-five dollars and forty-six cents ($10,599,075.46).

On August 12, 1994 plaintiff made a formal demand on Highland Park's Assessor, Mayor and City Attorney to place the full amount of the initial judgment on defendant's next tax roll. Defendant refused to accede to plaintiff's request. Plaintiff then filed a motion asking this court to issue a writ of mandamus ordering defendant to place the judgment on

its next tax roll, pursuant to Michigan Compiled Law (M.C.L.) § 600.6093. On October 19, 1994 I entered an Opinion and Order granting plaintiff's request. Subsequently, Highland Park filed two motions requesting that I reconsider my order. These motions were denied November 18, 1994 and December 22, 1994 respectively. On January 6, 1995 the Chrysler Corporation (Chrysler) filed a motion to intervene premised on the fact that if the Tax Assessor placed the judgment on the tax rolls Chrysler would be forced to pay its water bills twice. Only plaintiff objected to Chrysler's intervention. These objections were withdrawn at oral argument, so I granted Chrysler's motion on January 30, 1995. Thus, Chrysler became a party to these proceedings for all purposes. Realizing this Detroit filed a motion to satisfy both judgments using funds owed to Highland Park by Chrysler under a December 1, 1993 agreement (Agreement).[1] After hearing oral argument I granted plaintiff's motion on February 21, 1995, but refused to vacate the writ of mandamus. This opinion is written to support those actions.

## II. *Analysis*

### A. Writ of Mandamus

Chrysler, in its motion to intervene, argued that the writ of mandamus issued in this case violated art. 9 § 25 of the Michigan Constitution. That section states:

> Sec. 25 Property taxes and other local taxes and state taxation and spending may not be increased above the limitations specified herein without direct voter approval.

Const.1963, art. 9, § 25. This provision is commonly referred to as the Headlee Amendment. Sections 26–34 of the Michigan Constitution implement the Amendment. The key section is section 31 which reads as follows:

> Units of Local Government are hereby prohibited from levying any tax not authorized by law or charter **when this section is ratified** or from increasing the rate of an existing tax above the rate authorized by law or charter when this section is ratified, without the approval of a majority of the qualified electors of that unit of Local Government voting thereon.

Const.1963, art. 9, § 31 (emphasis added).

Chrysler states that under this provision the writ of mandamus is unconstitutional because it would force defendant to levy taxes in excess of 20 mills without voter approval.

 Chrysler's position is inaccurate. The Headlee Amendment does not prevent imposition of a tax or tax increase that was authorized prior to the time the Headlee Amendment took effect. *Taxpayers United v. City of Detroit*, 196 Mich.App. 463, 493 N.W.2d 463 (1992). M.C.L. § 600.6093 was enacted prior to the Headlee Amendment.[2] Therefore, a tax increase necessitated by a valid court judgment is not within the prohibitions of the Headlee Amendment. In addition, as is shown below, state law cannot prevent a federal judge from enforcing his judgments.

### B. Motion to Satisfy Judgment

 This is a motion for an order to compel Chrysler to pay monies owing Highland Park directly to Detroit. Defendant and Chrysler contend that Michigan state law prohibits appropriating funds owed to a city in order to satisfy judgments. Therefore, according to Chrysler and Highland Park, such an action contradicts Federal Rule of Civil Procedure 69(a). That Rule states in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution ... shall be in

---

**1.** On December 1, 1993 Chrysler and Highland Park entered into an agreement to compensate Highland Park for monies lost when Chrysler moved its corporate headquarters to Auburn Hills, Michigan. Under the terms of the Agreement Chrysler agreed to pay Highland Park thirty million dollars ($30,000,000) by December 1, 1996. Chrysler has paid seventeen million dollars on this debt to date ($17,000,000). The remaining thirteen million dollars ($13,000,000) will be paid in installments of five million on December 1, 1995, three million on January 15, 1996 and five million on December 1, 1996.

**2.** The Headlee Amendment was ratified November 7, 1978. § 600.6093 was enacted January 1, 1963.

accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

*Id.*

■ The argument Chrysler and Highland Park make is specious; it is inconceivable that state and local entities can thwart federal courts' ability to enforce judgments "through the adoption of immunizing procedures and vague statutory schemes", *Arnold v. BLAST Intermediate Unit 17*, 843 F.2d 122, 128 (3rd Cir.1988).

Numerous cases stand for the proposition that Rule 69(a) does not prevent a district court from using whatever means are necessary to guarantee compliance with its judgments. *United States v. Harkins Builders, Inc.*, 45 F.3d 830, 832–33 (4th Cir.1995) (Rule 69(a) is not "inconsistent with the federal policy of affording judgment creditors the right to a writ of execution to enforce money judgments in federal courts".); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1227 (7th Cir.1993); *Hankins v. Finnel*, 964 F.2d 853, 860 (8th Cir.1992) ("Where state law fails to supply the necessary procedure, or actually stands in the way of enforcement, the district court may take the necessary steps to ensure compliance with its judgment"); *Arnold*, 843 F.2d at 128; *Collins v. Thomas*, 649 F.2d 1203, 1206 (5th Cir.1981) (A county may not "hide behind state procedural shields to avoid the consequences of a valid district court judgment ...".); *Gary W. v. State of Louisiana*, 622 F.2d 804, 806 (5th Cir.1980).[3]

In *Arnold* plaintiffs received a judgment against plaintiff, a state agency. *Arnold*, 843 F.2d at 123. In answering defendant's contention that it did not have the power to satisfy the judgment because state law pro-

hibited the agency from using funds for non-budgeted expenditures the court said:

[T]his argument founders on the precedential shoals that support the enforcement of a federal judgment even where state law bars the seizure of funds or the payment of a judgment without legislative appropriation.

*Id.* at 128, 129.

The conclusions of these cases are appropriate because Rule 69(a) was drafted simply as a procedural method for execution of judgments because the "Advisory Committee believed that development of a series of rules on supplementary proceedings would be impractical and onerous ...". JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, Ch. 7, part 2, ¶ 69.03 at 69–10. In doing so, the draftsman of the Rule did not mean to borrow the entire procedural law of the forum state and thus place a procedural straitjacket on this court. *Resolution Trust Corp.*, 994 F.2d at 1226. Therefore, Michigan Law cannot prevent me from enforcing my judgment either by a writ of execution or writ of mandamus.

■ Granting Detroit's latest motion is the proper way to resolve this case. Detroit provides waste water services to Highland Park and because of the health and safety of Highland Park's citizens it is vital that Detroit continue to furnish these services. Thus, Detroit cannot shut down its waste water interceptors. Nor can Detroit be required to provide this vital service without compensation. Executing on the funds owed by Chrysler to Highland Park provides a fair and efficient method of insuring that Detroit is compensated without compromising the health and welfare of Highland Park citizens. Thus, it is the optimal method for resolving this conundrum.

I am advised that Highland Park has available an amount of money described as between one million, eight hundred thousand

---

**3.** I am aware of an unpublished opinion rendered by the U.S. Court of Appeals for the Sixth Circuit which said, in dicta, that Rule 69(a) limits the court to those remedies generally provided by state law. *C. Paul Rogers v. R. Howard Webster*, 779 F.2d 52 (6th Cir.1985). An unpublished opinion cannot be used as precedent. Sixth Circuit Rule 24(c). I believe the court was on safer ground when it stated in the preceding paragraph that, "[p]rocess subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution". *Id.* quoting *Riggs v. Johnson County*, 73 U.S. (6 Wall.) 166, 187, 18 L.Ed. 768 (1867).

dollars (1,800,000) and two million dollars ($2,000,000). I order Highland Park to pay this forthwith to the Detroit Water and Sewerage Department.

Accordingly, plaintiff's motion to satisfy the judgment is hereby GRANTED. An Order, so providing, will be entered.

### ORDER FOR SATISFACTION OF JUDGMENTS

The court having previously entered a Judgment in favor of the City of Detroit against the City of Highland Park on June 28, 1993 in the amount of $8,093,865.02 for sewerage services through March 29, 1993, and having entered a second Consent Judgment in favor of the City of Detroit against the City of Highland Park on February 21, 1995, in civil action no. 94–73135, in the amount of $2,505,210.44 for sewerage services for the period March 29, 1993 through November 29, 1994, and the City of Detroit having filed a Motion to Satisfy Judgment and the City of Highland Park and Chrysler Corporation having filed briefs in opposition to Detroit's motion, and Detroit's motion having come on for oral argument on Tuesday, February 21, 1995, and the court being fully advised in the premises; now, therefore,

IT IS HEREBY ORDERED:

1. The City of Highland Park shall pay to the City of Detroit, through the Detroit Water and Sewerage Department, the amount of $1,800,000 within one week from the date of this Order.

2. The court's Writ of Mandamus issued on October 19, 1994, in civil action no. 92–76775, shall remain in full force and effect.

3. Beginning December 1, 1995, and thereafter as they become due, Chrysler Corporation shall pay directly to the City of Detroit, through the Detroit Water and Sewerage Department, any and all amounts otherwise payable to the City of Highland Park under a certain Agreement between Chrysler Corporation and the City of Highland Park, dated December 1, 1993, which amounts shall be applied to reduce the outstanding amount, plus post-judgment interest, then due and owing on the two judgments referred to above, and such other amounts as may be then due and owing as provided in paragraph 4. below.

4. The City of Highland Park shall immediately establish a separate account in a banking institution satisfactory to the City of Detroit, and shall deposit into said account on a daily basis any and all amounts received by the City of Highland Park in payment of bills for wastewater services rendered by it to its customers. Any and all amounts so deposited shall be held in trust solely for the benefit of the City of Detroit and shall be paid over to the City of Detroit, through its Detroit Water and Sewerage Department, beginning March 31, 1995, and on or before the last business day of each month thereafter until further order of the court.

In the event the payments to the City of Detroit from the separate account created hereby are not sufficient to pay for current services being provided by the City of Detroit to the City of Highland Park, any deficiency shall be added to the then-unpaid balance of the judgments referred to above and shall be paid from the monies otherwise due from Chrysler Corporation to the City of Highland Park under the Agreement referred to in paragraph 3. above.

5. The court retains jurisdiction to monitor any and all amounts paid by Highland Park to the City of Detroit under the terms of this Order until the judgments referred to above, plus post-judgment interest, have been fully satisfied.