IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

―――――――――――――

No. 99-30977

―――――――――――――

SPECIALTY HEALTHCARE MANAGEMENT, INC.,

Plaintiff-Appellee,

versus

ST. MARY PARISH HOSPITAL, ETC., ET AL.,

Defendants,

ST. MARY PARISH HOSPITAL, ETC.,

Defendant-Appellant.

―――――――――――――

Appeal from the United States District Court
For the Western District of Louisiana

―――――――――――――

July 31, 2000

Before REYNALDO G. GARZA, JOLLY, and HIGGINBOTHAM, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

This diversity case arises out of an effort to enforce an arbitral award by a federal order directed at a Parish hospital in Louisiana. Franklin Foundation Hospital appeals the district court's grant of a writ of execution and an award of attorney fees in favor of Specialty Healthcare Management, Inc. because the Louisiana Constitution provides that "no public property or public funds shall be subject to seizure." We find that Louisiana law here controls; that neither the hospital's consent to binding arbitration nor its contention in resisting a preliminary

injunction that Specialty's injuries were not irreparable waived its protections under the Louisiana Constitution.  We VACATE the grant of a writ of execution and the award of attorney fees.

I

In August 1993, St. Mary Parish Hospital Service District No. 1, d/b/a Franklin Foundation Hospital ("the hospital"), agreed with NME Management Services, Inc. ("NMMS") that NMMS would manage, staff, and operate an inpatient rehabilitation treatment program at the hospital, a small thirty-five bed facility.  Approximately a year later, the hospital agreed to NMMS's assignment of its management contract to Specialty Healthcare Management, Inc. ("Specialty").  Specialty assumed all of NMMS's obligations under the agreement.

The relationship did not fare well.  The hospital gave Specialty notice in November 1996 that Specialty had not complied with their agreement.  Two months later the hospital terminated the agreement.

Specialty sued the hospital in the United States District Court, alleging diversity jurisdiction.  It sought monetary damages, as well as declaratory and injunctive relief.  The hospital demanded arbitration, which was mandatory under the agreement.  The hospital also successfully resisted a preliminary injunction, urging that an injunction was inappropriate in part because monetary damages were calculable and thus Specialty would suffer no irreparable injury, a matter we will return to.

2

Specialty dismissed the suit, and the parties arbitrated in accordance with the laws of Louisiana.

Specialty received an arbitration award of nearly $750,000 plus interest and sought confirmation of the award in the district court, pursuant to 9 U.S.C. § 9.[1] The court confirmed the award in a judgment, requiring the hospital to pay the award within 30 days. When the hospital refused to pay, Specialty sought a writ of execution under Rule 69(a).[2] The hospital argued that Louisiana's antiseizure provision controls. The district court granted Specialty's request for a writ of execution and attorney fees, and this appeal ensued.

---

[1]Section 9 provides, in part, that:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award . . . . If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

We note that the parties' agreement to arbitrate did not include an explicit agreement that a judgment could be entered upon an award. In the past, some courts have held that this is fatal to a court's jurisdiction to confirm the award. See Lehigh Structural Steel Co. v. Rust Engineering Co., 59 F.2d 1038, 1039 (D.C. Cir. 1932).

More recently, however, this circuit has held that when the parties agree to final and binding arbitration, invoke the district court's jurisdiction before arbitration, and then seek to confirm the award without objection by either party, the parties' implied consent to confirmation permits the district court's continued exercise of jurisdiction. See T & R Enterprises, Inc. v. Continental Grain Co., 613 F.2d 1272, 1279 (5th Cir. 1980).

The only arguable difference in the present case is that the parties' agreement did not specifically agree to "final and binding" arbitration, but instead stated that any dispute would be "determined and settled by arbitration." However, the hospital has never disputed Specialty's assertion that the parties agreed to binding arbitration. The hospital has only urged that such consent did not waive reliance on state antiseizure provisions during execution. Thus, we read "determined and settled" to mean "final and binding" – at least for the purpose of applying T & R Enterprises.

[2]FED. R. CIV. P. 69(a).

3

Federal Rule of Civil Procedure 69(a) provides that the

> [p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, . . ., except that any statute of the United States governs to the extent that it is applicable.

Article 12, § 10 of the Louisiana Constitution permits suits against the State and its political subdivisions, but subsection (C) states that "no public property or public funds shall be subject to seizure." The hospital is a hospital service district that was created by the St. Mary Parish Policy Jury. Thus, under state law, the hospital is a political subdivision of Louisiana whose assets are exempt from seizure.[3]

Under Rule 69(a), state procedure on execution would govern unless a federal statute otherwise applied.[4] The arbitral award was confirmed under 9 U.S.C. § 9 of the Federal Arbitration Act.[5] Neither § 9 nor any other portion of the FAA provides any additional procedures for enforcing confirmed awards. Instead, § 13 of the FAA specifically provides that a confirmed arbitral award "may be enforced as if it had been rendered in an action in the

---

[3]See LA. REV. STAT. ANN. § 46:1072(2)(a) (West Supp. 1996); see also id. § 46:1051 et. seq. According to the hospital, it only has to pay the judgment if it chooses to appropriate funds for that purpose. See LA. REV. STAT. ANN. § 13:5109 (B)(2) (West 1991).

[4]See generally 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 69.03[2] (3d ed. 1999).

[5]Since the FAA does not create federal jurisdiction, confirmation under § 9 requires an independent basis for federal jurisdiction, such as diversity jurisdiction in the present case. See Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 103 S. Ct. 927, 942 n.32 (1983).

court in which it is entered." Thus, for awards confirmed in federal court, Rule 69(a) and its incorporation of state procedure remains the governing rule, at least on the surface.

Nevertheless, federal interests sometimes trump the substance of a state's antiseizure provision by means other than Rule 69(a). For example, in civil rights cases, this circuit has held that it is within the scope of federal power to command state officials to pay judgments from state funds, such as judgments for attorney fees under 42 U.S.C. § 1983, despite the existence of state antiseizure provisions, even though a writ of execution is not issued.[6] One justification for this result is that Congress under its section 5 powers of the Fourteenth Amendment chose to enact legislation to permit all successful civil rights litigants to recover attorney fees; thus, there is a federal interest in the monetary remedy.[7]

The Eastern District of Michigan, in City of Detroit v. City of Highland Park,[8] stated that "it is inconceivable that state and local entities can thwart federal courts' ability to enforce

---

[6]See Collins v. Thomas, 649 F.2d 1203 (5th Cir. 1981); Gates v. Collier, 616 F.2d 1268 (5th Cir. 1980); Gary W. v. Louisiana, 622 F.2d 804 (5th Cir. 1980). In these cases, Rule 69(a) was not used; mandamuses issued under Rule 70.
    Similarly, in Leroy v. City of Houston, 906 F.2d 1068 (5th Cir. 1990), this circuit held that federal law allows recovery of attorney fees for violations of voting rights guarantees. Despite the fact that there was a compelling federal interest, this court held that Rule 69(a) did not permit execution against the city of Houston because Texas law prohibited execution "on property belonging to a city in its governmental or municipal character." Id. at 1085. Because Texas law permitted enforcement of a money judgment against a city by mandamus, Rule 70 authorized the district court to order the city to pay the judgment. See id. at 1085-86.
    This circuit has approved asset seizure through a writ of fieri facias to satisfy a judgment of attorney fees in the civil rights context, despite Louisiana law prohibiting such seizure. See Bowman v. City of New Orleans, 747 F. Supp. 344 (E.D. La. 1989), aff'd, 914 F.2d 711 (5th Cir. 1990). Regardless of the rule applied, the cases demonstrate no basis to override state antiseizure provisions absent a federal interest.

[7]See e.g., Gary W. v. Louisiana, 441 F. Supp. 1121, 1125-27 (E.D. La. 1977), aff'd, 622 F.2d 804 (5th Cir. 1980).

[8]878 F. Supp. 87 (E.D. Mich. 1995).

5

judgments 'through the adoption of immunizing procedures and vague statutory schemes.'"[9] In that case, the court upheld the use of a writ of mandamus ordering Highland Park to pay money to Detroit for Detroit's provision of water services mandated by federal law: the Clean Water Act.[10]

Assuming a federal court has the power to compel the payment of money in contravention of state execution provisions so long as there is a federal interest in the remedy, we must determine whether such a federal interest exists in the current case. Specialty argues that this case implicates a federal interest in arbitration created by the FAA that includes an interest in successful enforcement. The hospital argues that the FAA was invoked solely as a procedure to confirm the award and that the FAA expresses no federal interest in the scope or manner of execution.

Of course, even if the FAA was invoked solely to confirm the award, this does not mean that the parties agreement to arbitrate was not controlled by the FAA. The FAA is "applicable to any arbitration agreement within the coverage of the Act"[11] which includes written agreements to arbitrate if the contract "evidenc[es] a transaction involving commerce."[12] Assuming that the parties' management agreement involved "commerce," a broadly

---

[9]Id. at 90 (quoting Arnold v. BLaST Intermediate Unit 17, 843 F.2d 122, 128 (3d Cir. 1988)).

[10]See City of Detroit, 878 F. Supp. at 90.

[11]Moses H. Cone Memorial Hospital, 460 U.S. at 23.

[12]9 U.S.C. § 2.

6

construed term under the FAA,[13] the parties' agreement to arbitrate was governed by the FAA, a creature of federal law.

The FAA, however, does not preempt all state law related to arbitration agreements. It "contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration."[14] Thus, the question is simply whether Louisiana's antiseizure provision "would undermine the goals and policies of the FAA."[15]

The FAA's primary goal is to place agreements to arbitrate "on the same footing as other contracts."[16] As such, the FAA "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."[17] Moreover, "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit."[18] Based on these principles, an agreement to arbitrate under the laws of a

---

[13]See Del E. Webb Constr. v. Richardson Hosp. Authority, 823 F.2d 145, 147 (5th Cir. 1987). Neither party has contended that their agreement did not relate to interstate commerce, and we have no reason to say it did not: the agreement involved the staffing and management of a Louisiana hospital by an out-of-state corporation.

[14]See Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University, 489 U.S. 468, 477 (1989).

[15]Id. at 478.

[16]Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511 (1974) (quoting H.R. REP. NO. 96, 68th Cong., 1st Sess., 1, 2 (1924))) (internal quotation marks omitted).

[17]Id.

[18]Id. at 479.

particular state will be enforced as written, even if that state's arbitration laws differ from federal arbitration law.[19]

In this case, the parties' agreement included a Louisiana choice of law provision and an arbitration clause that required binding arbitration under the laws of Louisiana. Specialty contends that such an agreement waived reliance on state antiseizure provisions. The hospital responds that while it agreed to binding arbitration, such an agreement only meant that liability and damage findings would be binding, not that Specialty could enforce the award through any means of execution.

Under Louisiana law, arbitration is defined as "bind[ing] [the parties] reciprocally to perform what shall be arbitrated."[20] At

---

[19]See id. The FAA would preempt the application of state laws that frustrate its primary purpose of enforcing agreements to arbitrate according to their terms, such as laws making such agreements unenforceable. See id. at 471. Of course, state antiseizure laws limit the enforceability of the resulting judgment, but that is a separate question from the enforceability of the original agreement to arbitrate. As noted, § 13 of the FAA specifically envisions that a confirmed arbitral award will have no greater power in its enforcement than a judgment in a comparable action.

After Volt Informational Sciences was decided, this circuit held that a federal court is also not bound by the parties' choice of law in other limited circumstances not at issue here. See Atlantic Aviation, Inc. v. EBM Group, Inc., 11 F.3d 1276, 1279 (5th Cir. 1994) (holding that parties' choice of law cannot determine scope of judicial review); see also Ford v. NYLCare Health Plans of Gulf Coast, Inc., 141 F.3d 243, 248 n.6 (5th Cir. 1998) (discussing implied limitation on Atlantic Aviation in view of Volt Information Sciences).

Regardless of the power of a federal court to ignore the parties' choice of law clause and apply federal law in its place, we have no occasion to do so here. The parties stand by their choice of Louisiana law, and we find no conflicting federal interests.

[20]LA. CIV. CODE ANN. art. 3099. Specialty cites no cases applying or interpreting this general definition. Specialty also cites article 3129, which states that the "formality [of judicial confirmation] is only intended to invest the award with a sufficient authority to ensure its execution." The most reasonable interpretation of this language, however, is simply that judicial confirmation allows execution upon an arbitral award in conformity with state law like any other judgment, not that it imbues arbitral awards with greater powers than other judgments.

Specialty also cites Lander Co., Inc. v. MMP Investments, Inc., 107 F.3d 476 (7th Cir. 1997), in which the issue was whether a plaintiff's failure to explicitly allege jurisdiction under the FAA forfeited its right to confirm an arbitral award in federal court. See id. at 477-79. The court found that the defendant's consent to binding arbitration waived any argument regarding the plaintiff's failure to explicitly invoke the FAA when requesting judicial

8

best, this definition might be interpreted to require a party who consents to binding arbitration to perform an arbitral award of specific performance. However, we do not read this general definition to invalidate Louisiana's specific antiseizure provisions in all agreements to arbitrate.[21] There is no evidence suggesting that Louisiana intended arbitration agreements to automatically strip political subdivisions of the background protections they would otherwise enjoy.

Because we find that Louisiana's antiseizure provisions remained part of the law under which the parties agreed to

_____

confirmation. See id. at 480.

Here, however, it is undisputed that Specialty invoked the FAA and federal court diversity jurisdiction to confirm its arbitral award. More importantly, we do not read Lander to stand for the broader proposition that consent to binding arbitration also waives reliance on state antiseizure protections where, as here, those protections were already part of the law which the parties chose to govern their agreement. In other words, consent to binding arbitration may properly imply consent to confirmation, yet not imply consent to execution beyond the scope of the chosen law.

[21]As additional support for its position, Specialty cites Mastrobuono v. Shearson Lehman Hutton Inc., 115 S. Ct. 1212 (1995), in which the Supreme Court affirmed an arbitral award of punitive damages despite the fact that state case law did not allow an arbitrator to award punitive damages. In Mastrobuono, the agreement between the parties was ambiguous as to whether the parties had chosen to be governed by state decisional law; it was also ambiguous as to whether the parties had agreed to allow arbitration under other rules which would have allowed awards of punitive damages. See id. at 1216-19. Construing these ambiguities against the drafter, the Supreme Court affirmed the award. See id. at 1219.

Mastrobuono is inapplicable to the present case. Here, it is undisputed that the damage award was within the scope of the arbitrator's power. What it at issue is whether the hospital, by agreeing to binding arbitration, waived the protection of Louisiana's antiseizure provisions with respect to execution. Even if Mastrobuono were somehow applicable, these state protections were part of Louisiana statutory law by which the parties clearly agreed to be bound. And, as noted, we did not read Louisiana's general definition of arbitration to imply that the hospital waived state protections by consenting to arbitration.

It might be argued that it is pointless to agree to binding arbitration if the result would be a nonenforceable award. While that may sometimes be true, the fact that arbitration is less expensive than court litigation may be reason enough for two parties to agree to arbitration in the event of a dispute, even if one party has a means of avoiding execution on any resulting judgment. If that result seems unfair in the present case, it is not because the parties agreed to arbitration, but rather because the law the parties chose to govern their dispute was inherently one-sided when providing protections against certain forms of judgment satisfaction.

9

arbitrate, we see that the primary policy of the FAA is furthered rather than frustrated when those provisions are applied to the execution of a confirmed arbitral award. This conclusion is buttressed by the fact that under § 13, a judgment resulting from a confirmed arbitral award

> shall have the <u>same</u> force and effect, in all respects, as, and be subject to all provisions of law relating to, a judgment in an action.[22]

Thus, unless the parties have otherwise agreed, the FAA expresses no separate interest in making confirmed arbitral award more powerful than comparable court judgments. Had the current state contract dispute been litigated in federal court under diversity jurisdiction, the resulting judgment would have been enforceable according to Rule 69(a), which incorporates state exemptions unless federal law otherwise applied.[23] To allow the confirmed arbitral award to be enforced with greater power would contradict § 13.

In sum, the FAA encourages the enforcement of agreements to arbitrate according to their terms and expresses no additional federal interest in either the particular method or scope of execution of arbitral awards. We therefore find no inherent conflict between the FAA and state antiseizure provisions when the parties have agreed to arbitrate according to state law and their agreement does not waive reliance on state protections. While the FAA clearly encourages the creation of binding liability determinations, the manner of execution once liability has been determined is a concern the FAA simply does not touch. Thus, while the parties' agreement to arbitrate was in an important sense

---

[22]9 U.S.C. § 13 (emphasis added).

[23]<u>See, e.g.</u>, <u>First Nat'l Bank of Boston v. Santisteban</u>, 285 F.2d 855 (1st Cir. 1961); <u>United States v. Miller</u>, 229 F.2d 839 (3d Cir. 1956).

controlled by federal law, there was nevertheless no conflict between federal and state law justifying a writ of execution or an order commanding hospital officials to pay the judgment.[24]

                                III

Specialty alternatively argues that the hospital's prior conduct constitutes a waiver of resort to Louisiana's antiseizure provision. Under Louisiana law, "conduct so inconsistent with the intent to enforce [a] right as to induce a reasonable belief that [the right] has been relinquished" constitutes a waiver.[25]

According to Specialty, the hospital resisted a preliminary injunction by insinuating that monetary damages would be available to Specialty if Specialty prevailed at arbitration.[26] Thus, the hospital waived any reliance on the antiseizure provision. The hospital responds by stating that it never said that damages would be "collectable" but only that they were "calculable" and therefore not irreparable.

Specially initially requested preliminary injunctive relief that would have enjoined the hospital from terminating the agreement or employing Specialty's current and former employees. The hospital argued that such relief was inappropriate in part

---

[24]See FED. R. CIV. P. 70.

[25]Steptore v. Masco Constr. Co., 643 So.2d 1213, 1216 (La. 1994).

[26]Specialty stated below that its request for preliminary relief had been denied, and the hospital has not stated otherwise. The record, however, does not affirmatively indicate that Specialty's request was ruled upon before the case was sent to arbitration. A hearing was scheduled on the matter, but that hearing was canceled because Specialty dismissed the case and proceeded with arbitration. Even if the district court never ruled upon Specialty's request for injunctive relief, that would not prevent us from deciding the hospital's arguments before the court waived reliance on Louisiana's antiseizure provision.

11

because Specialty's damages were not irreparable since this was a contract dispute with easily quantifiable damages.

However, the hospital's argument regarding the quantifiable nature of Specialty's contract damages was only a small part of the hospital's opposition to Specialty's request for preliminary relief. The hospital's primary contention was that injunctive relief was inappropriate pending mandatory arbitration except in limited circumstances to preserve the status quo. According to the hospital, the status quo was already being preserved because the hospital had retained Specialty's former employees to staff the rehabilitation unit. The only difference was that the staff was paid by the hospital rather than Specialty.

The hospital also argued that Specialty would be unable to prevail on the merits, which counseled against the imposition of an injunction. The hospital contended that it was within its rights to terminate the management agreement because Specialty breached the agreement in numerous ways. Additionally, the hospital argued that the staff hiring prohibition, which prevented the hospital from hiring certain employees or former employees of Specialty, was unenforceable under Louisiana law.

Even when the hospital argued that Specialty would suffer no irreparable injuries, Specialty's argument that contract damages were easily quantifiable was only one part of the argument. In addition to damages under the contract, Specialty alleged several other injuries, including loss of reputation and goodwill and the disclosure of trade secrets. The hospital countered that irreparable injury in the form of loss of goodwill or reputation was impossible because no patients even knew that the hospital

staff had worked for Specialty rather than the hospital, since patients were billed through the hospital.

With regard to the disclosure of trade secrets, the hospital claimed that the requested injunction would not prevent such disclosure because even if the hospital were prohibited from employing Specialty's former employees, those employees would not be enjoined from leaking Specialty's trade secrets in other contexts.

Finally, the hospital argued that the equities did not merit the imposition of an injunction since this was not a case where staff members quit working for Specialty only to hire on with the hospital, but instead it was a case where Specialty fired its staff after it breached the management agreement and failed to relocate them, leaving them stranded and unemployed. As such, Specialty had only itself to blame for the fact that the hospital rehired them. Moreover, issuing an injunction would actually cause irreparable injury to the community, since it would result in continued inadequate staffing by Specialty, and such injury to the community outweighed any benefit Specialty would receive from the issuance of an injunction.

We recount these arguments not to express any view on their merits, but to highlight the fact that the hospital's argument regarding Specialty's contract damages was a minor part of the hospital's overall opposition to Specialty's motion. Of course, one might argue that the hospital's precise use of the terms "calculable" and "quantifiable" demonstrates that the hospital intended to imply that Specialty's injuries were not irreparable because monetary damages would be available to make Specialty whole in the event that Specialty prevailed at arbitration. If that is

13

was what the hospital clearly implied, it might be a basis for waiver or estoppel. The hospital's precise language, however, is equally consistent with the theory that the hospital was arguing within but not beyond the boundaries of the relevant law.

There is some authority, however, for the proposition that an inability to actually collect on a money judgment may suffice to make an injury irreparable.[27] Thus, it may have been insufficient for the hospital to argue that Specialty's damages were calculable in order to show they were not irreparable. That the hospital may have made an ultimately losing argument, however, does not entail that it intentionally misrepresented the standard for irreparable injury; it is equally conceivable that the hospital was unaware of such contrary authority.

In sum, while we are sympathetic to Specialty's position, we cannot find that the hospital's circumscribed arguments constitute conduct that is "so inconsistent with the intent to enforce [a] right as to induce a reasonable belief that [the right] has been relinquished."[28] For all of these reasons, we VACATE the district court's order issuing a writ of execution.


IV

This circuit applies state law in determining whether attorney fees should be awarded in state-based claims.[29] Under Louisiana law, fee awards are allowed only when authorized by contract or

---

[27]See Alvenus Shipping Co. v. Delta Petroleum (USA) Ltd., 876 F. Supp. 482, 487 (S.D.N.Y. 1994).

[28]Steptore, 643 So.2d at 1216.

[29]See U.S. ex rel. Varco Pruden Bldgs. v. Reid & Gary Strickland Co., 161 F.3d 915 (5th Cir. 1998).

statute.[30]  It is undisputed that there is no Louisiana statutory basis for the fee award in this case.

Nevertheless, federal courts have the power to award attorney fees for vexatious behavior including the refusal to abide by an arbitral award without justification,[31] which is the precise reason that the district court awarded attorney fees to Specialty. Because the hospital's arguments against issuing a writ of execution were supported by legal justification, the award of attorney fees must also be VACATED as an abuse of discretion.[32]

WRIT VACATED; FEE AWARD VACATED.


ENDRECORD

---

[30]Steptore, 643 So.2d at 1218.

[31]See International Ass'n of Machinists & Aerospace Workers v. Texas Steel Co., 639 F.2d 279, 283 (5th Cir. 1981); see also Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991).

[32]See Chambers, 501 U.S. at 50 (applying abuse of discretion standard when reviewing fee award based on district court's inherent power to police itself).

REYNALDO G. GARZA, Circuit Judge, dissenting:

I respectfully dissent. Any reasonable person would believe that an agreement to "binding" arbitration means that any resulting damages would be enforceable and collectable. Otherwise, why agree to arbitrate? Moreover, when the other side argues below that there will be no irreparable injury because damages will be sufficient, any reasonable person would take this as indicating that damages will be collectable. For how can it be that damages which cannot be collected repair any injury? Because the majority reaches a conclusion contrary to such reasonable expectations, I dissent.

What the majority forgets to note is that the purpose of arbitration is to provide participants with a speedy and effective alternative to the courts, which in turn relieves courts of some of the burden of their ever increasing caseload. Today's decision will provide a disincentive to enter into arbitration, which will mean that cases such as these must be tried in state and federal court. I repeat: who will enter into binding arbitration if it is not truly binding? The Hospital's consent to binding arbitration would lead any reasonable party to believe that any resulting award could be enforced, including, through the seizure of assets upon the hospital's refusal to pay. What is more, the Hospital failed to argue below that state law prevented any such seizure. Instead the Hospital, quite to the

16

contrary, argued that monetary damages alone would be adequate, not that an arbitral award could not be enforced. This reinforced the reasonable assumption the parties were clearly operating under, namely that the arbitral award could be enforced. Under these circumstances, I would find that the state anti-seizure law argument was waived.

This is all particularly troubling where it is the Hospital that demanded arbitration, perhaps knowing full well that any agreement would not be enforced. The Hospital makes a mockery of the arbitration proceedings by, after reaching an arbitral agreement, raising the state law defense to avoid paying the agreed-upon amount.

I also find that the Hospital's conduct was so inconsistent with the intent to enforce the anti-seizure provisions as to induce the reasonable belief that the right had been relinquished. This would be a waiver under Louisiana law. The majority notes that all the Hospital argued was that any contract damages would be easily quantifiable, and therefore not irreparable, not that any such damages would be enforceable or collectable. I would find, as the majority hints, that an inability to collect on a money judgment would suffice to make an injury irreparable. Therefore, when the Hospital argued below that the injuries in question were not irreparable, any reasonable party would take this as a statement that any damages would be collectable.

17

To conclude, I note that a Louisiana lawyer sitting as a federal judge decided this issue of Louisiana law, and I would defer to his judgment on this matter.