Pamela L. **PRESCOTT**

v.

**NORTHLAKE CHRISTIAN SCHOOL, et al.**

No. Civ.A. 01–475.

United States District Court, E.D. Louisiana.

Nov. 14, 2002.

See also 2003 WL 282330.

Hugh B. Exnicios, Exnicios Legal Center, Folsom, LA, Victor Roma Farrugia, Catherine hauvin Cooper, Victor R. Farrugia, PLC, New Orleans, LA, for Plaintiff.

Thomas Michael Keiffer, Gill & Keiffer, LLC, Covington, LA, for Defendants.

### *ORDER AND REASONS*

BARBIER, District Judge.

Before the Court is Plaintiff's **Motion to Confirm Arbitration Award** (Rec.Doc. 22), which was set for an October 9, 2002 hearing on the briefs. Defendant filed a Memorandum in Opposition (Rec.Doc. 24) and has filed a **Motion to Reopen Court Proceedings and Appeal to Trial Court of Arbitration Award/Motion to Vacate or Modify Arbitration Award** (Rec.Doc. 21). That motion is set for hearing on November 20, 2002. Plaintiff also submitted a brief (Rec.Doc. 31) in response to Defendant's opposition. Upon consideration of the briefs and exhibits submitted by counsel and the applicable law, the Court concludes that Plaintiff's motion should be **GRANTED**. Consequently, Defendant's motion to vacate or modify the arbitration award is **DENIED**.

## BACKGROUND [1]

The issues underlying the present dispute arise out of an employment contract for the 1999–2000 school year. *See Rec. Doc. 22, exhibit A.* Defendant, Northlake Christian School, hired Plaintiff, Pamela L. Prescott, to serve as elementary/preschool principal. The contract required that all claims and disputes arising out of the employment agreement and relationship be submitted to biblically-based mediation and arbitration. The contract further required that the arbitration process be governed by the *Rules of Procedure for Christian Conciliation*, written by the Institute for Christian Conciliation (ICC Rules). The parties agreed that this would be the sole method for resolving claims and disputes between them, and expressly waived the right to file a lawsuit, except to enforce a legally binding arbitration award.

In the spring of 2000, Plaintiff was terminated and was told by Defendant to vacate the premises of the school by March 31, 2000. Furthermore, her contract for the 2000–2001 school year was not renewed. Defendant continued to pay Plaintiff's salary and provide benefits through the duration of her 1999–2000 school year contract.

Subsequently, in February 2001, Plaintiff filed suit in this Court against Defendant, as well as its board of directors and its chief administrator. Plaintiff's complaint asserted claims for alleged gender discrimination, sexual harassment, retaliation, and breach of contract pursuant to 42 U.S.C. § 2000e *et seq.*, and various state laws. *Rec. Doc. 1.* However, on June 29, 2001, the Court granted Defendant's motion to compel arbitration and the case was stayed in federal court. *Rec. Doc. 10.* Additionally, the Court administratively closed the case. *Id.*

The parties then submitted their dispute to Biblically-based mediation and arbitration. The parties signed a mediation/arbitration agreement on March 16, 2002. *Rec. Doc. 22, exhibit B.* The agreement stated that the parties would proceed before the Institute for Christian Conciliation (ICC) and would be governed by the ICC Rules. *Id. at 1.* The agreement also included a choice-of-law clause which stated that the agreement was subject to arbitration pursuant to the Montana Uniform Arbitration Act. *Id. at 2.* Lastly, the parties agreed to include a handwritten clause which stated that "[n]o party waives appeal rights, if any, by signing this agreement."

After unsuccessful attempts at mediation, the parties proceeded before a sole arbitrator.[2] During the course of the six-day arbitration hearing, the arbitrator heard testimony from at least twenty-eight witnesses and received and reviewed the evidence and affidavits submitted by the parties. *Rec. Doc. 22, exhibit C, at 2.* On June 14, 2002, the arbitrator rendered his judgment, awarding Plaintiff $157,856.52 for damage to her reputation and future loss of income. The arbitrator also concluded that Plaintiff owes Defendant $786.46 for past due COBRA payments. The arbitrator concluded that the evidence failed to prove Plaintiff's claims for violation of the Louisiana Whistleblower Protection Act, La. R.S. § 23:967, or for gender discrimination, sexual harassment, and

---

1. In confirming the arbitration award, the Court adopts, and incorporates by reference, the arbitrator's findings of fact. *See Rec. Doc. 22, exhibit C.* See the arbitrator's findings of fact for a thorough description of the facts underlying this case.

2. Prior to the commencement of arbitration, Plaintiff voluntarily dismissed with prejudice all claims against the individual defendants. *Rec. Doc. 22, exhibit C, at 1.* Thus, only one defendant, Northlake Christian School, remains a party. *Id.*

retaliation under 42 U.S.C. § 2000e *et seq.* *Id. at 14.*

However, the arbitrator did conclude that Defendant breached its contract with Plaintiff "legally as well as Biblically" in wrongfully terminating Plaintiff. *Id.* The arbitrator stressed that Defendant failed to follow Matthew 18, one of the major biblical principles which guided and governed the parties' employment contract and relationship. *Id.*

Defendant then filed a Motion to Reconsider with the ICC case administrator. *See Rec. Doc. 21, exhibit K.* The arbitrator denied Defendant's motion on July 9, 2002. *See id., exhibit M.* Defendant then filed an Objection to Ex Parte Communications, a Motion for New Hearing, and a Motion for Disclosure contending that new evidence had been uncovered which necessitated a hearing. *See id., exhibits N, O, & P.* On July 31, 2002, the arbitrator summarily denied both of the motions filed by Defendant. *See id., exhibit O.*

Plaintiff now seeks to confirm the arbitration award, arguing that the award is final and binding. Defendant counters by arguing that the arbitrator engaged in misconduct and exceeded the powers given to him by the arbitration agreement. Defendant further contends that the handwritten clause included in the arbitration agreement by the parties expands the scope of the Court's judicial review. Pursuant to this expanded scope of review, Defendant argues that the Court should deny the motion to confirm and grant the motion to vacate on the grounds that the arbitrator erred as a matter of law in concluding that Plaintiff was wrongfully terminated and in awarding Plaintiff damages, despite the fact that Defendant fully compensated Plaintiff after her termination.

## DISCUSSION

1. *What law governs the judicial review of the arbitration award?*

The first issue to address is what statutory scheme governs the Court's review of the arbitration proceedings and the award. Plaintiff argues that the Montana Uniform Arbitration Act (MUAA), MONT.CODE § 27–5–111 *et seq.,* governs because of the choice-of-law provision contained in the arbitration agreement. Defendant argues that the Court's review is governed by the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*

The FAA is "applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Thus, the FAA clearly applies to the arbitration agreement in the instant case. *Rec. Doc. 10.* However, the FAA does not preempt all state law regarding arbitration agreements. *Specialty Healthcare Mgmt., Inc. v. St. Mary Parish Hosp.,* 220 F.3d 650, 654 (5th Cir.2000). The underlying policy behind the FAA is to "ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 476, 109 S.Ct. 1248, 1254, 103 L.Ed.2d 488 (1989).

The Fifth Circuit has likened arbitration agreements to other contracts, and stressed that the intention of the parties controls. *Ford v. NYLCare Health Plans of the Gulf Coast, Inc.,* 141 F.3d 243, 247 (5th Cir.1998). Thus, it is the clear law of the Fifth Circuit that parties to an arbitration agreement may select a choice-of-law provision which governs the arbitration process, as well as judicial review of the award. *Specialty Healthcare,* 220 F.3d at 654–55; *ASW Allstate Painting & Constr.*

*Co. v. Lexington Ins. Co.,* 188 F.3d 307, 310 (5th Cir.1999); *Ford,* 141 F.3d at 248. A choice-of-law provision will be upheld as long as that state's arbitration laws and policies do not undermine the goals and policies of the FAA. *ASW Allstate Painting,* 188 F.3d at 310. Mainly, the state law must not impede the FAA's primary purpose of enforcing arbitration agreements according to their terms. *Specialty Healthcare,* 220 F.3d at 655 n. 19. For example, the FAA would preempt the laws of a state whose laws make arbitration agreements unenforceable. *Id.*

■ The arbitration agreement in the instant case contains a Montana choice-of-law clause. Montana has enacted the Montana Uniform Arbitration Act (MUAA). MONT.CODE § 27–5–111 *et seq.* In interpreting the MUAA, the Montana Supreme Court holds that there is a strong general state policy favoring arbitration. *Holm–Sutherland Co. v. Town of Shelby,* 295 Mont. 65, 982 P.2d 1053, 1055 (1999). Montana arbitration law does not appear to frustrate the goals of the FAA. Thus, the MUAA governs judicial review of the arbitration agreement and award in question.

2. *Should the arbitration award be vacated or modified under the MUAA?*

■ Under the MUAA, a party may apply to a district court to have the arbitration award confirmed. MONT.CODE § 27–5–311. The award must be confirmed unless another party makes a timely application to vacate, modify, or correct the arbitration award. *Id.* If there is a timely application, then the court must proceed under the MUAA provisions for vacating, modifying, or correcting an award. MONT.CODE §§ 27–5–311 & 312.

**3.** Defendant's opposition brief submits arguments on (b)—(d). Grounds (a) and (e) are

This is so because judicial review of an arbitration award is strictly limited by statute under the MUAA. *Geissler v. Sanem,* 285 Mont. 411, 949 P.2d 234, 237 (1997). A reviewing court is not permitted to review the merits of the controversy. *Stockade Enterprises v. Ahl,* 273 Mont. 520, 905 P.2d 156, 157 (1995). Furthermore, the party seeking to vacate, modify, or correct the arbitration award has the burden of alleging and proving that one of the statutory grounds exists. *Id.* at 157–58. Under the MUAA, a court may only vacate an arbitration award if:

(a) the award was procured by corruption, fraud, or other undue means;

(b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(c) the arbitrators exceeded their powers;

(d) the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of 27–5–213, as to prejudice substantially the rights of a party; or

(e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27–5–115 and the party did not participate in the arbitration hearing without raising the objection.[3]

MONT.CODE § 27–5–312(1). The fact that the relief awarded would not or should not have been awarded by a court of law is not grounds for vacating or refusing to confirm the award. *Id.*

not at issue in this case.

An arbitration award may be modified or corrected only if:

(a) there was an evident miscalculation of figures or mistake in the description of any person, thing, or property referred to in the award;

(b) the arbitrators awarded upon a matter not submitted to him and the award may be corrected without affecting the merits of the decision upon the issues submitted; or

(c) the award is imperfect in a matter of form not affecting the merits of the controversy.

MONT.CODE § 27–5–313(1). In the instant case, Defendant does not seek a modification or correction of the award on any of the above grounds, and thus § 27–5–313 does not apply.

A. *Was there evident partiality, corruption, or misconduct on the part of the arbitrator that prejudiced the rights of Defendant?*

██ The Montana Supreme Court has defined partiality very narrowly. *Geissler v. Sanem*, 285 Mont. 411, 949 P.2d 234, 237 (1997). "The partiality which will suffice to vacate an arbitration award must be certain, definite, and capable of demonstration; alleged partiality which is remote, uncertain or speculative is insufficient." *Id.* (quoting *May v. First Nat'l Pawn Brokers, Ltd.*, 269 Mont. 19, 887 P.2d 185, 189 (1994)).

Recently, the Montana Supreme Court has interpreted the MUAA to allow for a manifest disregard of the law standard. *Geissler*, 949 P.2d at 238. The court in *Geissler* held that "when an arbitrator is aware of a clearly governing principle of [state] law, and blatantly refuses to follow it, the statutory conditions of § 27–5–312(1)(b) . . . have in fact been met." *Id.* at 237–38. However, a court must find that there was more than a simple misap-

plication of the law by the arbitrator. *Id.* at 238. The arbitrator must "[appreciate] the existence of a clearly governing legal principle [and decide] to ignore or pay no attention to it." *Id.* at 239 (quoting *Merrill Lynch, Pierce, Fenner & Smith v. Bobker*, 808 F.2d 930, 933–34 (2d Cir. 1986)).

██ In the instant case, Defendant argues that the arbitrator participated in ex parte communications with Plaintiff's counsel. In July 2002, Defendant submitted a motion to the arbitrator, seeking a reconsideration of the arbitration award. *See Rec. Doc. 21, exhibit K.* Plaintiff's counsel submitted his opposition brief without faxing a copy to Defendant's counsel. *See id., exhibit N.* Plaintiff's counsel did not submit the copy directly to the arbitrator, but submitted it to the case administrator, pursuant to the ICC Rules. *See id., exhibit O(1) & (2).* Therefore, Plaintiff counsel's communications were not ex parte.

Defendant argues that the opposition brief contained new evidence and was prejudicial under the ICC Rules. *See id., exhibits K & O.* However, Defendant complains of activities that occurred after the arbitrator rendered his judgment. Defendant fails to demonstrate how this caused the arbitrator to be partial or corrupt in rendering his judgment. More importantly, Defendant fails to show how this prejudiced its interests.

Defendant also argues that the arbitrator allegedly refused to disclose circumstances which Defendant feels created partiality. *See Rec. Doc. 21, exhibit P.* Once again, Defendant relies on unsupported assertions that fail to rise to the required level of certainty and demonstrability. Defendant also fails to show how this prejudiced its interests in any way.

Additionally, Defendant argues that the arbitrator misapplied Louisiana law gov-

erning the employment contract between the parties and the applicable remedies. *See id.* Defendant does not assert that the arbitrator was aware of clearly governing law and blatantly refused to apply it. Thus, the manifest disregard of law standard has not been met in this case. Defendant's misapplication argument is better suited for the next issue presented. In conclusion, Defendant fails to show how there was any evident partiality, corruption, or misconduct on the part of the arbitrator which prejudiced either of the parties.

### B. *Did the arbitrator exceed his power under the arbitration agreement?*

■ The authority of an arbitrator is limited by the scope of the arbitration agreement. *Terra W. Townhomes, L.L.C. v. Stu Henkel Realty,* 298 Mont. 344, 996 P.2d 866, 871 (2000). A court may vacate an arbitration award when it reaches beyond the contractual boundaries of the agreement. *Id.* "An arbitrator exceeds his powers when he decides matters which were not submitted to him." *Id.* (internal quotations omitted). "[I]f the remedy fashioned by the arbitrator has been rationally derived from the arbitration agreement it will be upheld on review." *Id.* (internal quotations omitted). It is irrelevant whether the award is legally correct or incorrect. *Nelson v. Livingston Rebuild Ctr., Inc.,* 294 Mont. 408, 981 P.2d 1185, 1188 (1999). Furthermore, a court may not vacate an award solely because a court of law may not have been able to award similar damages. *Id.*

■ The parties submitted to the arbitrator the issue of whether or not Plaintiff was wrongfully terminated by Defendant. *See Rec. Doc. 22, exhibit B, at 3.* The arbitrator ruled in Plaintiff's favor con-

cluding that Defendant did breach the employment contract. *See id., exhibit C, at 14.* The arbitrator concluded that Defendant breached the contract "legally as well as Biblically." *See id.* However, the arbitrator stressed that Defendant breached the contract by not following the biblical principles of Matthew 18. *See id.* Essentially, Defendant breached the contract because it failed to follow the proper procedures in attempting conciliation, before it terminated Plaintiff.

Defendant argues that the parties' employment contract did not include Matthew 18 as a governing principle of the employment relationship. According to Defendant, Matthew 18 is solely a procedural principle which is supposed to guide the parties through the Christian conciliation process. Defendant also argues that under Louisiana law, which allegedly governs the employment contract, it did not breach the contract or wrongfully terminate Plaintiff.

Defendant cites *Encore Prods., Inc. v. Promise Keepers,* 53 F.Supp.2d 1101, 1111 (D.Col.1999), for the proposition that the arbitration award must be fashioned in such a way that it is consistent with Louisiana law.[4] In *Promise Keepers,* the service contract in question had a provision which stated that Colorado law governed the interpretation of the contract. *Id.* at 1106. The parties agreed to arbitrate under the same ICC rules present in the instant case. *Id.* at 1111. Under ICC Rule 4, the Bible is to be the supreme governing authority in the conciliation process. *Id.* Further, Rule 42 states that the ICC Rules control the conciliation process except where state or federal law specifically indicate that they may not be superseded. Rule 40 requires that the arbitration award be within the scope of the parties' agreement.

---

4. This is the only reported case dealing with arbitration under the ICC Rules.

The plaintiff in *Promise Keepers* argued that Colorado law conflicted with the ICC Rules and that the motion to compel arbitration should be dismissed. *Id.* In ruling on the motion to compel arbitration, the court stated that, at the time, there was no inconsistency when applying Colorado law. *Id.* The court stated that under Colorado law and the ICC Rules, the arbitrator would have to fashion a result that is consistent with Colorado law. *Id.* However, the court held that it did not even need to rule on the plaintiff's argument because it was premature. *Id.* The question of which law to apply had not even been presented to the arbitrator yet. *Id.*

This opinion by a district court judge on the U.S. District Court for the District of Colorado was not rendered by a court sitting in review of an arbitration award. Further, it fails to discuss the biblical principles implicated and involved in the underlying service contract. One cannot tell from a reading of the opinion, whether any biblical principles were even implicated in the underlying service contract. More importantly, it fails to address the significance of the Matthew 18 principle present in the instant case. Thus, the Court finds that *Promise Keepers* is not dispositive.

Under the arbitration agreement and the ICC Rules in the instant case, the arbitrator was to consider all applicable state and federal laws. However, the Bible was to be the supreme authority governing all aspects of the conciliation process. *Rec. Doc. 22, exhibit A, at 1 & 4;* ICC Rule 4. The arbitrator was to grant any remedy that he deemed to be scriptural, just, and equitable, as long as it was within the scope of the parties' agreement. ICC RULE 40.

Defendant is a Christian private school. As a condition precedent of being hired by Defendant, Plaintiff was required to be a "born again" Christian. *Rec. Doc. 22, exhibit A, at 4.* Paragraph eleven of the employment contract states that Plaintiff must follow the principles of Matthew 18 and other biblical principles. *Id.* The contract further required that both parties resolve their disputes in conformity with Matthew 18 and other biblical principles. *Id. 1 & 4.* The arbitrator found that Defendant wrongfully terminated Plaintiff by failing to follow Matthew 18. *See Rec. Doc. 22, exhibit C, at 14.* The arbitrator concluded that Matthew 18 applied to the actual employment relationship of the parties and was not just a procedural rule to govern the mediation and arbitration process. *See id., exhibit C, at 1–15.*

Given the unique nature of this employment agreement and the parties' choice of arbitration method, it appears that the arbitrator's award was rationally related to the parties' agreement. While the employment contract does state that it should be interpreted under the laws of Louisiana, the contract and the arbitration agreement stress the supreme authority of the Bible in the employment relationship between Plaintiff and Defendant. The parties intended to be guided not only by state and federal secular law, but also by the Bible. Under the MUAA, the award cannot be overturned merely because a court would not have been able to award similar damages. Consequently, the arbitrator did not exceed his powers in the instant case by finding that there was a "biblical" breach of contract.

D.  *Did the arbitrator refuse to postpone a hearing upon sufficient cause being shown, or refuse to hear evidence material to the controversy, or commit any other actions which prejudiced the hearing rights of Defendant?*

Defendant contends that the arbitrator refused to hear evidence material to

the controversy, which prejudiced Defendant's hearing rights. Specifically, Defendant claims that new evidence was uncovered after the arbitrator's judgment was rendered, and thus the arbitrator should have granted the Motion for New Hearing. *See Rec. Doc. 21, exhibit O.* Defendant argues that Plaintiff admitted, post-judgment, that there was cause to terminate her and that her claim is based on not being given a hearing, as required by the employment contract. *Id.* Defendant contends that this alleged admission warranted the granting of a new hearing. *Id.* Defendant submitted this argument to the arbitrator as part of its Motion for New Hearing. Defendant also argues that the arbitrator failed to disclose alleged ex parte communications between Plaintiff's counsel and the arbitrator. *Id.*

Both of Defendant's arguments do not rise to the level of evidence material to the controversy. The arbitrator's basis for the award relied heavily on biblical principles. It is thus irrelevant whether or not Plaintiff admitted that there was cause to terminate her employment. Further, as stated above, Plaintiff made no ex parte communications with the arbitrator because the communications were submitted to the case administrator, as required by ICC Rules. The arbitrator allowed the parties to submit any evidence they had before ruling on the Motion for New Hearing. The arbitrator denied the motion, implicitly ruling that there was no new evidence material to the outcome of the controversy. On review, Defendant fails to show how the alleged new evidence would overturn the arbitration award.

3. *Does the clause contained in the arbitration agreement stating "no party waives appeal rights, if any, by signing this agreement," expand the scope of the judicial review?*

█ Defendant argues that this clause exhibits the parties' intent to expand the scope of judicial review to include review of the arbitrator's findings of fact and conclusions of law. According to Defendant, the Court may overturn findings of fact that were clearly erroneous and review the conclusions of law *de novo.* Plaintiff counters by arguing that the clause merely confirms the appeal rights that are currently present under Montana law. Since the only appeal rights under the MUAA are the grounds for vacating or modifying an arbitration award, Plaintiff argues that the Court's scope of judicial review is not expanded by the clause.

Montana courts have not yet dealt with the issue of expanding the scope of judicial review through contract. However, the United States Supreme Court, in interpreting the Federal Arbitration Act, has stated that "parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Sciences, Inc. v. Board of Trustees,* 489 U.S. at 478–79, 109 S.Ct. 1248, 1255–56 (1989). This allows the parties to enter into contracts which create the rules that govern the arbitration process. *Id.* Thus, there is no federal policy which favors arbitration under a particular set of procedural rules. *Id.* at 476, 109 S.Ct. at 1254. The policy behind the FAA is merely to require courts to enforce arbitration agreements in the same manner and with the same force as other types of contracts. *Id.* at 478, 109 S.Ct. at 1255. Consequently, several courts have expressly held that parties may contractually agree to expand the scope of judicial review of the arbitration process beyond that set out in the FAA or under state arbitration law. *See, e.g., Harris v. Parker Coll. of Chiropractic,* 286 F.3d 790 (5th Cir.2002); *LaPine Tech. Corp. v. Kyocera Corp.,* 130 F.3d 884 (9th Cir.1997).

However, the arbitration agreement in the instant case does not actually expand

the scope of judicial review. The phrase "if any," which was included in paragraph eight of the arbitration agreement, does not expressly state that the parties intend to allow for full judicial review of issues of fact and law. *See Rec. Doc. 22, exhibit B.* It merely preserves whatever appeal rights are statutorily granted by the MUAA. Under the MUAA, a reviewing court may only vacate or modify an arbitration award that implicates one of the grounds contained in § 27–5–312 or 313 of the Montana Code. The Court is thus limited to the grounds contained in the MUAA for vacating or modifying an arbitration award.

### CONCLUSION

Under the above analysis, Plaintiff's arbitration award should be confirmed. Under the MUAA, Defendant cannot carry its burden of showing that the award should be vacated, modified, or corrected in any way. As a result, the arbitration award must be confirmed.[5]

Therefore;

It is **HEREBY ORDERED** that Plaintiff's Motion to Confirm Arbitration Award (Rec.Doc. 22) is **GRANTED.**

It is **FURTHER ORDERED** that Defendant's Motion to Reopen Court Proceedings and Appeal to Trial Court of Arbitration Award/Motion to Vacate or Modify Arbitration Award (Rec.Doc. 21) is **DENIED.**

[5] Pursuant to § 27–5–314 of the Montana Code, the Court enters a separate final judgment confirming the arbitration award.