**LANDER CO., INC., a New Jersey Corporation, Petitioner,**

v.

**MMP INVESTMENTS, INC., an Illinois Corporation, Respondent.**

No. 95 C 50325.

United States District Court, N.D. Illinois, Western Division.

June 4, 1996.

Bradford P. Lyerla, John Jeffrey Zimmerman, Jenner & Block, Chicago, IL, for petitioner.

Jack S. Tenenbaum, Schwartz, Cooper, Greenberg & Krauss, Chicago, IL, Brian D. Roche, Robert H. Nathan, Sachnoff & Weaver, Ltd., Chicago, IL, for respondent.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Petitioner, Lander Co., Inc., filed a petition to confirm an arbitral award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (Convention) issued by an arbitrator in New York, New York on October 31, 1995. Jurisdiction is alleged under 9 U.S.C. §§ 1, 9, 201, 202, 203 and 207, as well as 28 U.S.C. § 1332 and venue is proper pursuant to 9 U.S.C. § 204.[1] Respondent, MMP Investments, Inc., has moved to dismiss the petition to confirm. Alternatively, respondent requests leave to present a complete record of its defenses under Articles IV and V of the Convention. Petitioner, in response to this latter request, asks this court to order respondent to post a bond to secure payment of the arbitral award.

### FACTS

The following facts are taken from the petition to confirm and are viewed in a light most favorable to petitioner, the non-moving party.[2] According to the allegations of the

---

1. The petition to confirm actually presents solely a federal question arising under Title 9 and, thus, 28 U.S.C. § 1331 provides the proper basis for jurisdiction. The allegations pertaining to diversity jurisdiction under section 1332 are merely surplusage as there are no non-federal claims presented by the petition to confirm.

2. Respondent, in its motion to dismiss, refers to Fed.R.Civ.P. 81(a)(3) and 12(b)(6) as its procedural basis for dismissal. Rule 81(a)(3) provides,

in relevant part, that the rules of civil procedure apply in proceedings under Title 9 of the United States Code "only to the extent that matters of procedure are not provided for in [Title 9]." Thus, because Title 9 does not contain a provision applicable to a motion to dismiss a petition to confirm, Rule 12(b) applies. Rule 12(b)(1), rather than Rule 12(b)(6), is the proper procedural basis for the motion to dismiss, however, as the motion challenges the jurisdictional basis of the petition, that is, whether this court has the

petition, in March 1991 petitioner and respondent entered into a written distributorship agreement which provides that respondent would be the exclusive distributor of petitioner's products in Poland for a period of two years. The distributorship agreement further provides, in pertinent part, that respondent will "distribute and advertise" petitioner's products in Poland.

In February 1993, the parties entered into a technical service agreement under which respondent became the exclusive manufacturer and distributor of petitioner's products in Poland for five years. Further, the technical service agreement states, in relevant part, that respondent "will use its best efforts to promote the sale of a maximum quantity" of petitioner's product "including the establishment and development of a competent sales force of adequate size and appointment of capable sub-distributors and an experienced advertising consultant." The technical services agreement also provides that all notices be sent to Michael Mucha of MMP Investments in Cary, Illinois and also to "MMP–Poland ... Attn: Jacek Slowakiewicz." Respondent is further required under the technical services agreement to carry adequate product liability insurance to protect and hold harmless petitioner in Poland.

Both agreements contain an arbitration clause which requires that any controversy arising under the agreements be arbitrated in accordance with the Rules of Conciliation and Arbitration of the International Chamber of Commerce with said arbitration being conducted in New York, New York. The agreements also provide that they shall be construed in accordance with New York state law.

In May 1993, a controversy arose out of the agreements to the extent that respondent claimed that certain products it received from petitioner were defective. In an effort to cure the alleged problems, petitioner's chairman of the board visited Poland. In February 1994, petitioner sent respondent a final termination notice.

Pursuant to the arbitration clause in the agreements, respondent filed a request for arbitration with the International Court of Arbitration of the International Chamber of Commerce (ICC Court). After the parties submitted their pleadings, the ICC Court appointed a sole arbitrator from New York to hear the dispute.

In January 1995 the arbitrator and the parties executed a terms of reference in which they acknowledged that the arbitral tribunal was properly constituted and that the arbitrator had jurisdiction. In July 1995, hearings were conducted, and the parties submitted exhibits and briefs. The arbitrator issued his award on October 31, 1995 in favor of petitioner for $536,444.

## CONTENTIONS

Respondent contends that the petition to confirm should be dismissed because where, as here, an arbitral award is issued in the United States and is based on an agreement between two United States companies, providing that New York law will apply, it does not fall within the definition of a recognizable and enforceable award under the Convention. Petitioner responds that in light of the language of section 202 of the implementing legislation, 9 U.S.C. § 202, the arbitral award is recognizable and enforceable under the Convention because the agreements call for performance in a foreign state.

## DISCUSSION

The court begins by noting the dearth of cases interpreting the Convention and its implementing legislation under Title 9. Furthermore, the parties have accurately described this case as one of first impression. The court has found no other case addressing the applicability of the Convention to an arbitral award[3] between two domestic compa-

---

authority to confirm the arbitral award under the Convention. Applying Rule 12(b)(1), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Rueth v. U.S. E.P.A.*, 13 F.3d 227, 229 (7th Cir.1993).

3. The case of *Fuller Co. v. Compagnie Des Bauxites De Guinee*, 421 F.Supp. 938 (W.D.Penn. 1976), while somewhat similar to the present case, is distinguishable as in that case one party sought to have the district court order arbitration under the Convention rather than having an arbi-

nies, under domestic law, entered into in the United States with agreements calling for performance in a foreign country. Nonetheless, the court considers this case to boil down to the singular issue of whether the provisions of the agreements calling for performance in Poland are sufficient to bring the arbitral award within the terms of the Convention.

To properly assess this issue, it is first necessary to look to the history behind the Convention. A proposed draft of the Convention called for it to apply only to arbitration awards rendered in a country other than the one wherein enforcement was sought. *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 931 (2d Cir.1983). Such a proposal was controversial, however, because some countries did not want an arbitral award to be defined only on a territorial basis, i.e., by the country in which it was entered. *Id.* As an alternative to the territorial definition, several countries proposed that the Convention apply to arbitral awards other than those considered as domestic in the country in which they are relied upon. *Id.* Other countries, including the United States, urged adoption of a territorial criterion only. *Id.*

Eventually a compromise was urged whereby both criteria would be included. *Bergesen*, 710 F.2d at 931. This compromise was intended to restrict the territorial concept. *Id.* Thus, the final language of the Convention provides that the "Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought ..." and that it "shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." Convention, Art. I, § 3.

To assure accession to the Convention by the greatest number of countries, two reservations were included in Article I(3). *Id.* The one of relevance to this case provides that "any State may on the basis of reciprocity declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State." Convention, Art. I, § 3. The United States made such a declaration in acceding to the Convention. *See* 9 U.S.C. § 201 (listing declarations of various acceding nations and quoting that the United States "will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State"); *see also Bergesen*, 710 F.2d at 932 (citing Presidential Proclamation, 21 U.S.T. 2517, T.I.A.S. No. 6997 (Sept. 1, 1970)). The adoption of the declaration does not, however, give rise to a narrow interpretation of the Convention. *Bergesen*, 710 F.2d at 933. This is so because the Convention should be interpreted broadly to effectuate its recognition and enforcement purposes. *Id.* (citing *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520 n. 15, 94 S.Ct. 2449, 2457 n. 15, 41 L.Ed.2d 270 (1974)).

In deciding the issue in this case, the court will look first to the terms of the Convention itself. Article I(1) states, in pertinent part, that the "Convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought ..." The parties here do not contest, and rightfully so, that the arbitral award at issue implicates the Convention under this "territorial" provision. The arbitral award at issue was clearly made in the United States.

The second relevant portion of Article I(1) provides that the Convention "shall also apply to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought." The Convention itself does not define what is meant by a non-domestic award. Petitioner asserts that such a definition is provided by section 202 of the Title 9. This assertion, however, overlooks the declaration of accession wherein it is stated that the United States "will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only awards made in the territory of another Contracting State." This declaration, by its express terms, limits the

tral award confirmed thereunder. *See Fuller*,  421 F.Supp. at 941 n. 3.

enforcement and recognition of arbitral awards on a territorial basis, that is, to those made in a country other than the United States.

The language of section 202 of Article 9 does not alter this interpretation. Section 202 merely states, in relevant part, that an award arising out of a commercial relationship "entirely between citizens of the United States" shall not fall under the Convention "unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relationship with one or more foreign states." The court does not interpret this language as expanding the scope of the Convention or as being inconsistent with the United States' declaration to apply the Convention on a territorial basis only, *see Bergesen*, 710 F.2d at 931.

First, the language is cast in terms of exclusion rather than inclusion. But it does so based on the status of the parties rather than the origin of the award. Hence, if two citizens of the United States obtain an award in another country (an award that would otherwise be enforceable under Article I(1) of the Convention) that award is excluded from being enforced under the Convention notwithstanding its otherwise enforceability under the territoriality provision of Article I(1) of the Convention. This limitation is itself limited, however, by the qualifying language that makes the award enforceable if it involves property abroad, envisages performance or enforcement abroad, or has some other reasonable relation to a foreign country. Thus, an award from another country that involves as parties two citizens of the United States may nonetheless be enforceable under the Convention if it meets one of the foreign relationship criteria set forth in the qualifying language. The qualifying language does not, however, serve to expand the scope of the Convention, as acceded to by the United States, to include an award between United States' parties issued in the United States. Such an interpretation would create an inconsistency between the accession declaration of the United States and the implementing language of section 202 of Article 9. The court will not reach such an anomalous result when a consistent interpretation is reasonably available. Furthermore, there is nothing in the legislative history which detracts from this interpretation.

Nor does the court agree with petitioner's contention that such language defines nondomestic arbitral awards. First, as the court has already discussed, the accession declaration of the United States effectively negates the non-domestic award option of Article I(1). Accordingly, there would have been no need to define a non-domestic award via the implementing legislation. Second, had Congress intended to do what petitioner suggests, it could have done so in a much more clear and straightforward manner rather than by backing into such a definition via language designed to limit a limitation. *See* A.J. van den Berg, *When is an Arbitral Award Nondomestic Under the New York Convention of 1958?*, 6 Pace L.Rev. 25, 48–49 (1985).

In reaching its conclusion, the court does not consider *Fuller Co. v. Compagnie Des Bauxites De Guinee*, 421 F.Supp. 938 (W.D.Penn.1976), to support a different result. That case addressed the issue of whether two United States parties to an agreement could be compelled to arbitrate under the terms of the Convention. As the *Fuller* court itself noted, that is a different situation from one concerning the recognition and enforcement of an arbitral award. *Fuller*, 421 F.Supp. at 941 n. 3. The *Fuller* case is distinguishable from the present case and its reasoning is not persuasive on the issue before this court.[4]

### CONCLUSION

For the foregoing reasons, the court grants respondent's motion to dismiss the petition to confirm an arbitral award and

---

4. Similarly, while the general propositions in *Bergesen* are helpful to an understanding of the history and purpose of the Convention, that case is readily distinguishable on its facts, *i.e.*, it concerned two foreign parties seeking confirmation of an arbitral award made in the United States. More importantly, the *Bergesen* court's reliance, in part, on the language in section 202 of Title 9 in defining a non-domestic award under Article I of the Convention lacks efficacy here as this court had determined that the United States did not adopt the non-domestic option of Article I.

dismisses this cause in its entirety. Accordingly, respondent's motion for an order requiring a bond to be posted is denied as moot.