POSNER, Chief Judge.
 

 This is a suit by the Lander Company against MMP Investments to enforce an arbitration award. The district court dismissed the suit for want of federal jurisdic
 
 *-1106
 
 tion, 927 F.Supp. 1078 (N.D.Ill.1996), and Lander appeals. The parties are American firms that made a contract (actually two contracts, but we can ignore that detail) for the distribution by MMP in Poland of shampoos and other products manufactured by Lander in the United States. The contract provides that disputes under it -shall be settled by binding arbitration in New York City pursuant to the arbitration rules of the International Chamber of Commerce. The parties had a falling out, Lander notified MMP that it was terminating the contract, and the latter filed a request for arbitration with the International Court of Arbitration, an organ of the International Chamber of Commerce. Lander did not contest the jurisdiction of the Court of Arbitration. The dispute proceeded to arbitration in New York City before a New York lawyer designated by the Court, who after five days of evidentiary hearings decided in favor of Lander, awarding it more than $500,000 plus interest.
 

 The arbitration rules of the International Chamber of Commerce make arbitration awards final and deem the parties by submitting their dispute to arbitration “to have waived their right to any form of appeal insofar as such waiver can validly be made.” ICC Rules of Arbitration Art. 24(2). MMP refused to pay the award, so Lander brought this suit to enforce it in the federal district court in Chicago, which is MMP’s home. The complaint (captioned “petition to confirm”) recites the diverse citizenship of the parties, notes that the United States is a party to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 21 U.S.T. 2517 (1970) (the “New York Convention,” as it is known), claims that the suit arises under the Convention and its implementing legislation, specifically 9 U.S.C. § 207, and states that the district court “has jurisdiction under 9 U.S.C. §§ 1, 9, 201, 202, 203 and 207, and under 28 U.S.C. § 1332” and that the amount in controversy (exclusive of interest and costs) exceeds $50,000. When the complaint was filed this was the minimum amount in controversy specified by 28 U.S.C. § 1332, the statute that confers diversity jurisdiction on the federal courts. The amount has since been raised to $75,000.
 

 MMP moved to dismiss the suit on the ground that the New York Convention was inapplicable to the parties’ arbitration; but in addition it moved to vacate the award. The Federal Arbitration Act, 9 U.S.C. §§ 1
 
 et seq.,
 
 allows only three months for mounting a judicial challenge to an arbitration award that is subject to the Act, 9 U.S.C. § 12, and MMP was concerned, as it explained to the district court, that “although Lander takes the position now that the Arbitral Award is covered by the New York Convention, other allegations in its Petition to Confirm suggest that if it is unsuccessful under the Convention, it will seek to enforce the Arbitral Award under the Federal Arbitration Act.” Under the Act, if you fail to move to vacate an arbitration award you forfeit the right to oppose confirmation (enforcement) of the award if sought later by the other party.
 
 Chauffeurs, Teamsters, Warehousemen & Helpers v. Jefferson Trucking Co.,
 
 628 F.2d 1023, 1027 (7th Cir.1980);
 
 Taylor v. Nelson,
 
 788 F.2d 220, 225 (4th Cir.1986);
 
 Florasynth v. Pickholz,
 
 750 F.2d 171, 174-77 (2d Cir. 1984); 4 Ian R. Macneil, Richard E. Speidel & Thomas J. Stipanowich,
 
 Federal Arbitration Law
 
 § 38.3.3.2 (1994). In contrast, the New York Convention contains no provision for seeking to vacate an award, although it contemplates the possibility of the award’s being set aside in a proceeding under local law, Art. V(l)(e), 21 U.S.T. at 2520, and recognizes defenses to the enforcement of an award.
 

 MMP asked the district judge to defer ruling on its motion to vacate until the judge decided whether the New York Convention was applicable. Lander opposed the motion, taking vigorous exception to MMP’s contention that the New York Convention did not apply. It did not argue that the arbitration award was enforceable under the Federal Arbitration Act. There were no other filings, and no oral argument, before the district judge ruled on the motions. He held that the New York Convention did not apply, and went on to dismiss the suit without mention of the Federal Arbitration Act. The Act’s one-year statute of limitations (9 U.S.C. § 9) would bar Lander from filing a new suit under the Act. So far as appears, Lander
 
 *-1105
 
 has no other judicial remedy to enforce its award, though conceivably it could sue to enforce it in Poland, hoping MMP has assets there.
 

 The judge should not have dismissed Lander’s suit, at least on jurisdictional grounds. The complaint sufficiently alleged jurisdiction under the Federal Arbitration Act as well as under the New York Convention. No other purpose than to allege jurisdiction under the Act can be assigned to the allegation of diversity jurisdiction and the citation of 28 U.S.C. § 1332, the diversity statute, and 9 U.S.C. § 9, the provision of the Federal Arbitration Act that authorizes suits in federal court to enforce arbitration awards in cases arising out of maritime contracts or contracts evidencing a transaction involving interstate or foreign commerce, 9 U.S.C. §§ 1, 2; no one doubts that the contract between Lander and MMP falls into the second category. The allegation of diversity was necessary because the substantive law applicable to the resolution of the parties’ dispute is not federal, and the Federal Arbitration Act is limited to arbitration agreements or awards that arise out of disputes that could be litigated in federal court.
 
 Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
 
 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 942 n. 32, 74 L.Ed.2d 765 (1983);
 
 Amgen, Inc. v. Kidney Center of Delaware County, Ltd.,
 
 95 F.3d 562, 567 (7th Cir.1996); 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
 
 Federal Practice and Procedure
 
 § 3569, pp. 170-72 (2d ed. 1984). Chapter 2 of Title 9, the chapter that creates jurisdiction to enforce awards made under the New York Convention, is not so limited, 9 U.S.C. § 203, and citation of the diversity statute would thus have been unnecessary had Lander thought that the district court had jurisdiction only by virtue of the Convention.
 

 MMP’s motion to vacate the arbitration award under the Federal Arbitration Act shows that it realized that Lander intended to base jurisdiction on the Act if necessary, and of course MMP said as much. The only basis for arguing that Lander waived jurisdiction under the Act is thus its failure, in responding to the motion to vacate, to confirm MMP’s suspicion that the Act was indeed an alternative ground of jurisdiction. The district judge overlooked the significance of the allegation of diversity. He said that “the allegations pertaining to diversity jurisdiction ... are merely surplusage as there are no nonfederal claims presented by the petition to confirm.” 927 F. Supp. at 1078 n. 1. Was this oversight a product of deception by Lander? We think not. The thrust of MMP’s response to the suit was to challenge jurisdiction under the New York Convention, and it was to this challenge that Lander replied. One reason for Lander to refrain from discussing an alternative basis for jurisdiction was that MMP was not arguing that the Federal Arbitration Act was inapplicable — indeed was acknowledging that it might be applicable. Lander was reasonable, if in retrospect incautious, in assuming that even if the district court agreed with everything that MMP was arguing, the only consequence — because the only relief sought by MMP — would be that the court would dismiss so much of the complaint as depended on the New York Convention and proceed to adjudicate the rest of the complaint under the Federal Arbitration Act.
 

 In any event a “waiver” of jurisdiction in the sense not of a deliberate choice to forgo basing jurisdiction on a particular statute but of an inadvertent failure to cite the statute (so “forfeiture” is the better term than “waiver”) is entitled to less weight than a waiver of a substantive ground for relief.
 
 Glisson v. U.S. Forest Service,
 
 55 F.3d 1325, 1328 (7th Cir.1995);
 
 Buethe v. Britt Airlines, Inc.,
 
 749 F.2d 1235, 1238-39 (7th Cir.1984); 5 Charles Alan Wright & Arthur R. Miller,
 
 Federal Practice and Procedure
 
 § 1210, pp. 121-22 (2d ed. 1990). The court either has jurisdiction or it does not. If it is pretty obvious that it has jurisdiction, the failure to cite the right statute is harmless and ought not lead to a forfeiture, as it would here, assuming the inapplicability of the New York Convention, because of the one-year statute of limitations for suits to enforce arbitration awards under the Federal Arbitration Act. When a district judge sees a request to confirm an arbitration award coupled with an allegation of diversity jurisdiction, a light
 
 *-1104
 
 bulb labeled “Federal Arbitration Act” ought to flash in his head; it is not an esoteric basis of federal jurisdiction. It is quite otherwise with the substantive allegations in a complaint. A plaintiff typically makes a selection on tactical grounds from a menu of possible grounds for asserting liability, and the district judge is in no position to guess which omitted grounds were omitted by sheer oversight and ought to be restored later.
 

 The waiver argument fails for the further reason that it itself was waived, by MMP’s conduct in this dispute, beginning with the contract, in which it agreed to
 
 binding
 
 arbitration. To agree to binding arbitration is to agree that if your opponent wins the arbitration he can obtain judicial relief if you refuse to comply with the arbitrator’s award. Were there a rule that no one could be ordered by a court to pay an arbitration award unless he agreed to submit himself to the court’s- jurisdiction, the signing of the agreement to
 
 binding
 
 arbitration would be a waiver of the rule. To invoke arbitration pursuant to such an agreement, as MMP also did, is further to agree to be bound, if necessary through court action, by the arbitrator’s award, provided, of course, that the award does not have any infirmity of a sort that a court can use to invalidate an arbitration award. Imagine MMP’s indignation if it had won the arbitration and Lander had denied that any court in the United States had jurisdiction to enforce the award.
 

 Objections to subject-matter jurisdiction cannot be waived. But that is not the issue. By assumption there is jurisdiction under the Federal Arbitration Act. MMP’s argument is that, even so, Lander cannot invoke that jurisdiction, because it failed to allege it more emphatically. The argument, in short, is not jurisdiction; it is waiver; and waiver arguments, unlike jurisdictional arguments, are waivable. E.g.,
 
 United States v. Archambault,
 
 62 F.3d 995, 998 (7th Cir.1995).
 

 We cannot stop here. We have assumed rather than established that the district court had jurisdiction under the Federal Arbitration Act. And even if it does, if there are differences between that Act and the New York Convention that are material to the resolution of Lander’s suit, we may have to decide whether the Convention applies. The Convention (including its implementing legislation) is more than a statute that confers jurisdiction; it contains procedural provisions besides; if it is inapplicable, but the court has jurisdiction on some other basis, its inapplicability may still affect the course of the suit. It has, for example, a longer statute of limitations — three years rather than one. 9 U.S.C. § 207. That is not a factor here. But if a court asked to enforce an arbitration award has less authority to turn down the request (in whole or part) under the Convention than under the Federal Arbitration Act, this could make a difference in this case— and may be why Lander, the enforcing party, was so eager to bottom jurisdiction on the Convention. One court, noting that manifest disregard of the law is an implied ground for vacating an award under the Act, but neither an express nor, the court thought, an implied defense to enforcement under the Convention, has held that it is indeed harder to knock out an award under the Convention.
 
 M & C Corp. v. Erwin Behr GmbH & Co., KG,
 
 87 F.3d 844, 850-51 (6th Cir.1996). We need not decide whether this is right; the issue (expressly left open by the Second Circuit in
 
 Parsons & Whittemore Overseas Co. v. Societe Generate De L’Industrie Du Papier (RAKTA),
 
 508 F.2d 969, 977 (2d Cir.1974)) has not been argued to us. It is enough that it
 
 may
 
 be right, meaning that whether the Convention is applicable may make a difference even though jurisdiction is secure under the Federal Arbitration Act.
 

 And it is secure. It is true that the provision of the Act that confers jurisdiction on the federal courts to confirm arbitration awards authorizes confirmation only in the court specified in the arbitration agreement (none was specified) or in the district in which the arbitration was conducted, which was the Southern District of New York rather than the Northern District of Illinois. 9 U.S.C. § 9. But this provision of section 9 merely creates alternatives to conventional venue,
 
 Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,
 
 49 F.3d 323, 329 (7th Cir.1995);
 
 In re VMS Securities Litigation,
 
 21 F.3d 139, 142-45 (7th Cir.1994), rather than exclusive venues for confirming arbitra
 
 *-1103
 
 tion awards. (Some earlier cases in other circuits, discussed in
 
 VMS,
 
 are contrary, e.g.,
 
 Sunshine Beauty Supplies, Inc. v. U.S. District Court,
 
 872 F.2d 310, 312 (9th Cir.1989), but they contain no arguments for their interpretation.) The district in which the defendant resides is a conventional venue for civil cases. There is no reason to force Lander to go to another district that would be less convenient for
 
 both
 
 parties, which is why those contrary decisions are not persuasive.
 

 It could also be argued that the New York Convention was intended to be exclusive within its domain. We would then
 
 have
 
 to consider its applicability to this case because if it were applicable there would be no jurisdiction under the Federal Arbitration Act. Nothing in the Convention or its history, or in the implementing legislation or
 
 its
 
 history, suggests exclusivity, and it would be particularly perverse in a case such as this involving a dispute squarely within the scope of the Federal Arbitration Act between two U.S. firms. In fact, Article VII of the Convention provides that the Convention shall not “deprive any interested party of any right he may have to avail himself of an arbitral award in the manner and to the extent allowed by the law or the treaties of the country where such award is sought to be relied upon.” 21 U.S.T. at 2520-21. We agree with the Second Circuit that there is “no reason to assume that Congress did not intend to provide overlapping coverage between the Convention and the Federal Arbitration Act.”
 
 Bergesen v. Joseph Muller Corp.,
 
 710 F.2d 928, 934 (2d Cir.1983).
 

 So there is jurisdiction under the Act but we still have to consider whether the course of the suit may be affected if the New York Convention is also applicable. Although the Convention is not exclusive, the U.S. implementing legislation provides that in the event of a conflict between its terms and those of the Federal Arbitration Act the Convention’s terms govern. 9 U.S.C. § 208;
 
 M & C Carp, v. Erwin Behr GmbH
 
 &
 
 Co.,
 
 KG,
 
 supra,
 
 87 F.3d at 851. We noted earlier that the scope of judicial review under the two regimes may be different. The only substantive defense to the enforcement of the award that MMP claims to have, however, is a defense that part of the award was based on a matter that had not been submitted to the arbitrator; in other words, that the arbitrator had exceeded his terms of reference. And that is a defense under both the Federal Arbitration Act and the New York Convention. Com-r pare 9 U.S.C. §§ 10(a)(4), 11(b), with Article V(l)(c) of the Convention. The wording is slightly different but there is no reason to think the meaning different.
 
 Management & Technical Consultants S.A v. Parsons-Jurden Int’l Corp.,
 
 820 F.2d 1531, 1534 (9th Cir.1987);
 
 Parsons & Whittemore Overseas Co. v. Societe Generate De L'Industrie Du Papier (RAKTA), supra,
 
 508 F.2d at 976. So we do not have to decide whether the Convention also applies to this case. But we think we should decide. The possible difference in the scope of judicial review that we mentioned earlier could still make a difference in the outcome of this case, because the litigation is in an early stage and MMP may want and be permitted by the district court to interpose a defense of manifest disregard of law by the arbitrator. Moreover, the issue of the Convention’s applicability has been fully and ably briefed and vigorously argued, and is bound to recur (under conditions no more favorable for decision) with the expansion of foreign activities by U.S. firms.
 

 Article 1(1) provides that the Convention shall apply not only to arbitral awards made in a different country from the one in which enforcement is sought (not the case here) but also to “arbitral awards not considered as domestic awards” in the country in which enforcement is sought. Article 1(3), however, authorizes a country “on the basis of reciprocity [to] declare that it will apply the Convention to the recognition and enforcement of awards made only in the territory of another Contracting State.” And in its declaration of accession the United States along with many other signatories announced that it “will apply the Convention, on the basis of reciprocity, to the recognition and enforcement of only those awards made in the territory of another Contracting State.” 21 U.S.T. at 2566; see notes following 9 U.S.C.A. § 201. Read no further, says MMP; the arbitration award in this case was made in the United States, not in another contracting state. But as natural a way to
 
 *-1102
 
 read the declaration is that the United States will enforce pursuant to the Convention only arbitral awards made in nations that also adhere to the Convention. This is the significance of the reference to reciprocity. The United States will not enforce an arbitration award made in a country that, by failing to adopt the Convention, has not committed itself to enforce arbitration awards made in the United States. Granted, “a Contracting State” would be clearer, but “another Contracting State” is clear enough in context; it means “another signatory of the Convention, like the United States, as opposed to nonsig-natories.”
 

 This reading of Article I, in contrast to a reading that would preclude enforcement in U.S. courts of awards rendered in this country, is supported by the U.S. implementing legislation: Chapter 2 of Title 9 authorizes the enforcement of arbitration awards in disputes wholly between U.S. citizens if, as here, the dispute arose out of a contract involving performance in a foreign country. 9 U.S.C. § 202. It could be argued that in so providing section 202 goes further than the Convention. An arbitration award made in
 
 and
 
 sought to be enforced in the United States is a domestic award according to traditional principles of Anglo-American conflicts of law, under which the law of the place of the award determines whether the award is valid.
 
 Restatement (Second) of Conflicts of Law
 
 § 220, comment c (1971). And the Convention excludes domestic awards. The alternative is to view section 202 as defining nondomestic award in Article 1(3) (more precisely as redefining it, altering the traditional Anglo-American approach) — or indeed as going beyond the Convention. We need not decide. MMP does not argue that section 202 is invalid, whether or not it tracks the Convention; nor could it argue that, for the statute is comfortably within Congress’s commerce power. And if it thus is valid, it doesn’t matter whether it goes beyond the Convention.
 

 This makes the language of section 202 critical. The section adopts the provisions of the Convention for any “arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title” — that is, either a “maritime transaction or a contract evidencing a transaction involving commerce,” 9 U.S.C. § 2 — provided only that if the relationship is entirely between U.S. citizens, it must involve performance abroad or have some other reasonable relation with a foreign country. There is no ambiguity; the relationship between Lander and MMP falls squarely within the inclusion and outside the exclusion. Congress may have believed that confining enforcement under the Convention to awards rendered abroad would drive away international arbitration business from New York. Or it may have been seeking to secure the Convention’s benefits, on the basis of reciprocity, to American businesses seeking judicial enforcement of foreign arbitration awards in the countries in which the award was made. Or it may simply have wanted to simplify the procedures governing the foreign activities of American firms, since American firms doing business abroad are bound to have contracts with foreign firms as well as other American firms. Whatever Congress’s precise thinking on the matter, it spoke clearly.
 

 The only other appellate court to have addressed the question whether the Convention applies to suits in the United States to enforce arbitration awards made here has held that it does apply, as we hold today.
 
 Bergesen v. Joseph Muller Corp., supra.
 
 The case differs from ours insofar as the disputants were both foreign corporations, but it is a difference irrelevant to the Second Circuit’s reasoning or our own in this case.
 

 The judgment of the district court is reversed with instructions to reinstate Lander’s suit.
 

 REVERSED.