JACADA (EUROPE), LTD, f/k/a CLIENT/SERVER TECHNOLOGY (EUROPE), LTD., Plaintiff,

v.

INTERNATIONAL MARKETING STRATEGIES, INC., **Defendant.**

No. 1:02–CV–479, 1:02–CV–78.

United States District Court, W.D. Michigan, Southern Division.

March 31, 2003.

Douglas L. Callander, Stacy M. Soper-Stine, Kreis, Enderle, Callander & Hudgins, PC, Kalamazoo, MI, for Defendant.

Daniel D. Quick, Dickinson Wright PLLC, Bloomfield Hills, MI, for Plaintiff.

## *OPINION*

ROBERT HOLMES BELL, Chief Judge.

These consolidated actions, one to vacate an arbitral award, and one to enforce the same arbitral award, are currently before the Court for a determination of the applicable standard of review.

### I.

Jacada (Europe) Ltd., formerly known as Client/Server Technology (Europe), Ltd. (hereinafter "Jacada") is a software developer incorporated in the United Kingdom. International Marketing Strategies (hereinafter "IMS") is a Michigan corporation.

On May 2, 1997, Jacada entered into a Distribution Agreement with IMS whereby IMS obtained the exclusive right to

market and distribute certain computer software developed by Jacada throughout Europe, the Middle East, and Africa. The Distribution Agreement contained the following provision:

> This Agreement will be governed by the laws of the State of Michigan. (The United Nations Convention on Contracts for the International Sale of Goods [1980] shall not apply.) ... All disputes hereunder shall be resolved exclusively in Kalamazoo, Michigan, and exclusively by arbitration by the American Arbitration Association in accordance with its commercial arbitration rules.

(Distribution Agreement at ¶ 11(g)).

During the term of the Distribution Agreement, a dispute arose over its interpretation and application to a particular sale. IMS initiated an arbitration proceeding with the American Arbitration Association pursuant to paragraph 11(g) of the Distribution Agreement. On April 3, 2001, the arbitration panel issued its award in favor of IMS in the amount of $401,299.00 to be paid within thirty days from the date of the award, and fifty percent of nine remaining payments of £203,-033 (pounds sterling) to be paid in periodic payments through February 1, 2003. Thereafter, Jacada filed a complaint in the Circuit Court for the County of Oakland to vacate the arbitral award and IMS filed a complaint in this Court to enforce the arbitral award.

The two actions were ultimately consolidated in this Court and are currently before this Court for a determination as to the applicable standard of review. Jacada contends that because the parties agreed that the Distribution Agreement was governed by Michigan law, and because the arbitral award was rendered in Michigan, any action to challenge or enforce an arbitral award should also be governed by Michigan law. IMS, on the other hand, contends that because one of the parties is

foreign and because the underlying contract relates to foreign commercial activity, review of the arbitral award is governed by the New York Convention on Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. §§ 201–208 (the "Convention").

## II.

Jacada contends that the issue of whether the Convention applies to this dispute has already been determined by this Court and should not be revisited.

In response to Jacada's motion to stay proceedings in this Court pending resolution of the state court action, this Court determined in an opinion dated August 13, 2001, that the Convention did not apply. This Court opined that state law applies in this case because the arbitration agreement was formed under Michigan contract law and the award was issued in Michigan applying Michigan arbitration law. This Court noted in that opinion that despite one of the parties being a foreign corporation, the award was a domestic award and therefore did not come under the Convention. Memorandum Opinion and Order, 8/13/03, at 3 (Docket # 13) (citing Restatement (Second) of Conflicts of law § 220, comment c (1971)). In the alternative, this Court noted that even if the Convention applied, Articles V and VI of the Convention allows the court to stay proceedings when there is a parallel proceeding in a court of competent authority. *Id.* It is evident from the cursory treatment of this issue and the alternative basis for the Court's decision, that this Court did not make a definitive ruling on the applicability of the Convention.

IMS filed a motion for reconsideration. In an opinion dated August 31, 2001, this Court acknowledged that it had subject matter jurisdiction over the case, but indicated that it was exercising its discretion

to stay the matter in the interests of preserving judicial resources. This Court further stated that IMS's arguments could be heard if the case were removed from state court. Memorandum Opinion and Order, 8/31/03, at 2 (Docket # 16). In other words, this Court essentially invited IMS to reargue the issue of the applicability of the Convention when and if this matter returned to federal court. The case has now returned to federal court. The Court is satisfied that it is proper at this time to review the issue of the applicability of the Convention.

### III.

The Convention is a United Nations treaty to which the United States became a party in December 1970. 9 U.S.C. § 201. Legislation implementing the Convention is codified in Chapter 2 of Title 9 of the United States Code. 9 U.S.C. §§ 201–208. "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 520, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), *quoted in Imperial Ethiopian Gov't v. Baruch–Foster Corp.*, 535 F.2d 334, 335 (5th Cir.1976); *Indocomex Fibres Pte. v. Cotton Co.*, 916 F.Supp. 721, 726 (W.D.Tenn.1996).

Article I of the Convention provides:

This convention shall apply to the recognition and enforcement of arbitral awards made in the territory of a State other than the State where the recognition and enforcement of such awards are sought, and arising out of differences between persons, whether physical or legal. It shall also apply to the arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought.

Convention, Article I(1) (emphasis added).

■ It is undisputed that since the arbitral award in this case does not meet the territorial criterion expressed in the first sentence of Article I(1). "Simply put, it is not a foreign award as defined in Article I(1) because it was not rendered outside the nation where enforcement is sought." *Bergesen v. Joseph Muller Corp.*, 710 F.2d 928, 932 (2d Cir.1983). The critical issue for this Court is whether the arbitral award which states that it was made in Southfield, Michigan, is a non-domestic award as contemplated in the second sentence of Article I(1).

The Convention does not define the term "domestic award." Accordingly, the reference in the second sentence of Article I(1) of the Convention to "arbitral awards not considered as domestic awards," has provided "a complex interpretive challenge to the courts in this country." *Coutinho Caro & Co. U.S.A., Inc. v. Marcus Trading, Inc.*, Nos. 3:95CV2362 AWT, 3:96CV2218 AWT, 3:96CV2219 AWT, 2000 WL 435566 at *4 (D.Conn. Mar. 14, 2000).

Jacada contends that this Court should look to traditional principles of Anglo–American conflicts of law for the meaning of "domestic award." According to these principles the law of the place of the award determines whether the award is valid, and an arbitral award made and sought to be enforced in the United States would be a domestic award. *See Lander Co., Inc. v. MMP Investments, Inc.*, 107 F.3d 476, 482 (7th Cir.1997) (citing *Restatement (Second) of Conflicts of Law*, § 220, comment c (1971)).

Although the Seventh Circuit in *Lander* referenced the traditional interpretation of "domestic award," it did not agree with Jacada's assertion that the traditional interpretation should govern the applicabili-

ty of the Convention to an arbitral award rendered in the United States. Instead, the Seventh Circuit followed the Second Circuit's determination in *Bergesen* that Congress gave meaning to the term "domestic award" in the implementing legislation:

Inasmuch as it was apparently left to each state to define which awards were to be considered nondomestic ... Congress spelled out its definition of that concept in section 202.

710 F.2d at 933.

Section 202 of Title 9 of the United States Code, broadly defines "nondomestic" awards to include all except a small class of awards that do not involve foreign citizens or have a relationship with a foreign country:

An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title [9 USCS § 2], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202 (emphasis added). According to the Second Circuit, this section was intended to ensure that "an agreement or award arising out of a legal relationship exclusively between citizens of the United States is not enforceable under the Convention in [United States] courts unless it has a reasonable relation with a foreign state." *Bergesen,* 710 F.2d at 933 (quoting H.R.Rep. No. 91–1181, 91st Cong., 2d Sess. (1970) 2, reprinted in 1970 U.S.Code Cong. & Admin. News 3601, 3602). The Second Circuit also adopted the view that awards "not considered as domestic" applies to "awards which are subject to the Convention not because made abroad, but because made within the legal framework of another country, e.g., pronounced in accordance with foreign law or involving parties domiciled or having their principal place of business outside the enforcing jurisdiction." *Bergesen,* 710 F.2d at 932. Stated differently, the second sentence of Article I(1), as supplemented by 9 U.S.C. § 202, applies to those arbitral awards made in the United States which arise from a commercial relationship with some significant foreign nexus. *Coutinho Caro,* 2000 WL 435566 at *4.

*Bergesen's* broad interpretation of the scope of the Convention has been widely followed. *See, e.g., Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte,* 141 F.3d 1434, 1441 (11th Cir.1998) (joining the First, Second, Seventh, and Ninth Circuit in their interpretation of awards "not considered as domestic"); *Jain v. de Mere,* 51 F.3d 686, 689 (7th Cir.1995) ("Chapter 2 mandates that any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention."); *Ministry of Def. of Islamic Republic of Iran v. Gould Inc.,* 887 F.2d 1357, 1362 (9th Cir.1989) (holding that Convention applies when award arises out of legal relationship which is commercial in nature and is not entirely domestic in scope); *Arbitration Between Trans Chem. Ltd. and China Nat'l Mach. Imp. & Exp. Corp.,* 978 F.Supp. 266, 293 (S.D.Tex.1997) (following *Bergesen* ). *See also Ledee v. Ceramiche Rag-*

*no,* 684 F.2d 184, 186–87 (1st Cir.1982) (holding that commercial agreement where one party is not an American citizen is subject to section 202).

■ The relationship between the parties in this case concerns performance abroad. The object of the Distribution Agreement was for the marketing and distribution of computer software throughout Europe, the Middle East, and Africa. The entire sales and marketing territory under the contract is outside the United States. No part of the contract was to be performed in the United States. Moreover, one of the parties is not an American citizen, the contract was signed abroad, and the alleged breach took place outside the United States. Thus, under *Bergesen* and its progeny, the arbitral award at issue in this case clearly falls under the Convention.

Jacada contends that *Bergesen* was wrongly decided and should not be followed by this Court. Jacada's contention is not supported by any case law and does not provide a convincing basis for ignoring the opinions of all of the circuit courts that have considered the issue. This Court is constrained to apply the *Bergesen* line of cases and accordingly finds that the arbitral award at issue in this case is governed by the Convention.

## IV.

Review of arbitral awards under the Convention is governed by the limitations contained in Article V of the Convention. *See* 9 U.S.C. § 207 ("The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."). Article V provides that recognition and enforcement of an arbitral award may be refused, at the request of the party against whom it is invoked, only under specific enumerated conditions. As the Sixth Circuit noted in

*M & C Corp. v. Erwin Behr,* 87 F.3d 844 (6th Cir.1996), "Article V of the Convention lists the **exclusive grounds** justifying refusal to recognize an arbitral award." *Id.* at 851 (emphasis added). *See also Indus. Risk,* 141 F.3d at 1446 ("In short, the Convention's enumeration of defenses is exclusive.").

According to IMS, the only applicable provision of Article V limits this Court's review to whether enforcement would be contrary to U.S. public policy. Convention, Article V(2)(b). IMS's recitation of the applicable standard of review ignores Article V(1)(e) of the Convention and Jacada's argument under that section. As Jacada points out, Article V(1)(e) provides that recognition and enforcement of the award may be refused if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made."

■ In *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.,* 126 F.3d 15, 19–21 (2d Cir.1997), the Second Circuit confirmed that Article V(1)(e) of the Convention allows a court in the country under whose law the arbitration was conducted to apply its domestic arbitral law to a motion to set aside or vacate that arbitral award. *Id.* at 21. "There is no indication in the Convention of any intention to deprive the rendering state of its supervisory authority over an arbitral award, including its authority to set aside that award under domestic law." *Id.* at 22. Rather, "[t]he Convention specifically contemplates that the state in which, or under the law of which, the award is made, will be free to set aside or modify an award in accordance with its domestic arbitral law and its full panoply of express and implied grounds for relief." *Id.* at 23 (citing Convention, art. V(1)(e)).

Because Jacada has moved to set aside or vacate an arbitral award entered in the United States, this Court may apply its domestic arbitral law to set aside or vacate that arbitral award. Jacada contends that the applicable domestic arbitral law is the law of Michigan because the arbitral award was entered in Michigan and the parties agreed that their agreement would be governed by the law of Michigan.

■ This Court disagrees with Jacada's assertion that review of the arbitral award will be governed by the law of Michigan. In *Yusuf*, the Second Circuit noted that in the case of the United States, the domestic procedural arbitral law is the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. *Yusuf*, 126 F.3d at 20–21. *See also M & C*, 87 F.3d at 849 (concluding that it could not apply the FAA's implied grounds for vacatur because the United States did not provide the law of the arbitration for purposes of Article V(1)(e)); *Lander*, 107 F.3d at 478 (noting that Article V(1)(e) of the Convention contemplates the possibility of the award's being set aside in a proceeding under local law).

■ Although the parties in this case indicated generally that their agreement was to be governed by Michigan law, the parties did not specify the standards under which an arbitral award would be reviewed. There is no question that because the parties' written agreement to arbitrate is part of a "contract evidencing a transaction involving commerce," it falls within the scope of the FAA. *See* 9 U.S.C. § 2. The FAA was enacted to provide for enforcement of privately entered agreements to arbitrate. *Ferro Corp. v. Garrison Indus., Inc.*, 142 F.3d 926, 932 (6th Cir.1998) (citing *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 53–54, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995)). "Arbitration under the Act [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements

as they see fit." *Ferro Corp.*, 142 F.3d at 934 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). However, a general state choice-of-law clause appended to a contract that also includes an arbitration provision does not preclude application of the FAA in a federal court proceeding. *Ferro Corp.*, 142 F.3d at 938. *See also UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992, 997 (8th Cir.1998) ("[W]e will not interpret an arbitration agreement as precluding the application of the FAA unless the parties' intent that the agreement be so construed is abundantly clear."). As the Sixth Circuit noted in *Ferro Corp.*:

Most contracts include a choice-of-law clause, and, thus, if each of these clauses were read to foreclose the application of the substantive law enacted by Congress in the FAA, the FAA would be applicable in very few cases. Such an interpretation of the FAA is simply not viable, as it would effectively emaciate the Act itself.

142 F.3d at 938. *See also Roadway Package Sys., Inc. v. Scott Kayser*, 257 F.3d 287, 289 (3rd Cir.2001), *cert. denied*, 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001) (holding that "a generic choice-of-law clause, standing alone, is insufficient to support a finding that contracting parties intended to opt out of the FAA's default regime.").

■ Where the FAA and state law governing arbitration agreements conflict, the state law is preempted. *Ferro Corp.*, 142 F.3d at 935. *See also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 688, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (state law not consonant with FAA is preempted by FAA). The FAA specifies the grounds under which an arbitral award may be vacated. 9 U.S.C. § 10. Under Michigan law, a court has broad powers to vacate an

award, including to the power to vacate an award if the arbitrator exceeded his or her powers. M.C.R. 3.602(J)(1)(c). Although the FAA is substantially the same as the Michigan court rule governing review of arbitral awards, review of arbitral awards provided under the FAA is more limited than the review available under Michigan law. *Detroit Auto Inter–Ins. Exch. v. Gavin,* 416 Mich. 407, 444–45 & n. 11, 331 N.W.2d 418 (1982). Because the parties in this case did not specify in their agreement that review of the arbitral award would be governed by state law, and because federal and state law conflict, the review will be governed by federal law.

For the reasons stated above, this Court concludes that this action is governed by the Convention, and consistent with the Convention, the Court will review Jacada's motion to set aside or vacate the arbitral award under the provisions of Chapters 1 and 2 of the FAA.

### *ORDER*

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that upon consideration of the parties' briefs as to the appropriate standard of review of the arbitral award (Docket # 's 27, 29, 32, 33), the Court shall review the arbitral award at issue under the standards articulated in the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards and the provisions of Chapters 1 and 2 of the Federal Arbitration Act, 9 U.S.C. §§ 1–16 and 201–208.