**Antonio M. MATABANG, Plaintiff,**

v.

**CARNIVAL CORPORATION, a foreign corporation, Defendant.**

**Case No. 09–21226–CV.**

United States District Court, S.D. Florida.

June 29, 2009.

Howard Scott Grossman, Grossman Attorneys at Law, Boca Raton, F.L., for Plaintiff.

Theodore Livingston Shinkle, Gray Robinson, Melbourne, F.L., for Defendant.

### *ORDER AND REASONS*

WILLIAM M. HOEVELER, Senior District Judge.

BEFORE the Court are two motions: (1) the plaintiff's motion for remand and (2) the defendant's motion to compel arbitration. For the reasons that follow, the motion for remand is GRANTED and the motion to compel arbitration is DENIED.

### *Background*

On New Year's Day of 2009, 25–year old Antonio Matabang Jr. ("Matabang") fell overboard from the Carnival M/V Sensation off the coast of Vero Beach, Florida and died at sea. Matabang was employed by Carnival as an entertainer under the terms of Carnival's "Revue Show Performer Contract." Paragraph 17 of the Contract requires employment disputes to be sent to mandatory arbitration in either London, Panama City, or Manilla, whichever is closest to the employee's home.

On April 14, 2009, Matabang's father, Antonio Matabang, Sr., ("plaintiff") filed this lawsuit against Carnival in state court in Miami Dade County. The plaintiff claims Carnival breached the Revue Show Performer Contract by refusing to pay Matabang's $50,000 death benefit without obtaining a legal release from the Matabang family.[1] Carnival removed the case on May 6, 2009, pursuant to 28 U.S.C. § 1441 and 9 U.S.C. §§ 202–208, the "Convention Act," which implements the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, a treaty known as the "New York Convention."

Carnival claims that the arbitration agreement is governed by the New York Convention. If so, then federal jurisdiction is proper and the Court must enforce the arbitration clause. If the arbitration agreement falls outside the Convention, there is no basis for federal jurisdiction and the case must be remanded.

### I.

■ Federal courts have only the power authorized by Article III of the Constitution and statutes enacted by Congress. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986), citing *Marbury v. Madison,* 1 Cranch 137, 173–80, 2 L.Ed. 60 (1803). In Section 205 of the Convention Act, Congress authorized federal removal jurisdiction over cases relating to arbitration agreements "falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." 9 U.S.C. § 205. Most arbitration agreements "falling under the Convention" arise from international commercial agreements between people or companies from different countries. But diversity of national citizenship is not necessary if the arbitration agreement is part of a contract that is international in character or relates to a foreign state. *See Bautista v. Star Cruises,* 396 F.3d 1289, 1294 n. 7 (11th Cir.2005). Because Matabang and Carnival are both citizens of the United States,[2] their agree-

---

**1.** The Revue Show Performer Contract does not discuss death benefits. These details are found in the separate "Seafarer's Manual," which Carnival describes as an "advisory document" about employee benefits. The Seafarer's Manual in evidence is not signed or dated, but neither side suggests that the information in the Manual is inapplicable. Both sides also accept that a dispute about death benefits is one "arising out of or in connection with" Matabang's employment.

**2.** Carnival is a Panamanian corporation but is deemed to be a U.S. citizen by 9 U.S.C. § 202 because its principal place of business is in Florida. *See* Carnival's Notice of Removal, ¶ 2.

ment to arbitrate falls under the New York Convention only if significant extra-domestic elements animate their relationship and enhance the concerns favoring recognition of foreign arbitration agreements. *See Reinholtz v. Retriever Marine Towing & Salvage,* 1993 WL 414719, at *4 (S.D.Fla.1993). This principle comes from the language of 9 U.S.C. § 202, which provides that:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial, including a transaction, contract, or agreement described in section 2 of [the Federal Arbitration Act], falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

Thus, the arbitration agreement between Matabang and Carnival is outside of the Convention unless their legal relationship "involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202.[3] Under § 202, the "legal relation-

ship" can be a transaction, contract, or agreement, among other things. In this case, it is a contract: the Revue Show Performer Contract. The Court must see a nexus to foreign commerce from that document.

## II.

■ It appears no court has squarely considered whether an American crew member's employment onboard a U.S.-based cruise ship is the kind of transnational legal relationship governed by the Convention.[4] Carnival highlights the international aspects of the relationship, pointing out that the Sensation flew a Bahamian flag, spent nights in the Bahamas, and was at sea five days a week during Matabang's employment. Further, the arbitration clause identified foreign locations for arbitration, and the choice-of-law provision identified the "laws of the flag of the vessel on which [Matabang] is assigned at the time the cause of action accrues" as the governing law; in this case, Bahamian law. On the other hand, the plaintiff emphasizes that Carnival and Matabang were both U.S. citizens; Matabang auditioned for the job in California and received training in Miami; the Sensation's home port was in Port Canaveral, Florida, where the ship was supplied and passengers boarded for each three-day or four-day roundtrip excursion; and the employment contract was negotiated and signed in Florida by Carnival's Florida-based representative.

■ Some of these details are more significant than others. The law is clear

---

**3.** The plaintiff accepts that the other jurisdiction requirements are met, i.e., that there is a(1) written arbitration agreement (2) providing for arbitration in the territory of a signatory to the treaty, that (3) arises out of a commercial legal relationship. *See Bautista,* 396 F.3d at 1294 n. 7 (11th Cir.2005).

**4.** In *Skordilis v. Celebrity Cruises, Inc.,* 2009 WL 129383 *3 (S.D.Fla.2009), the crew member was, in the final analysis, a Greek citizen. In *Lathan v. Carnival Corporation,* 08–23002–civ–KING at *4 (S.D.Fla., April 9, 2009), Carnival submitted—and the crew member did not dispute—that the company was not a U.S. citizen; the district court observed that the "four jurisdictional requirements of *Bautista* are not in contention." *Id.*

that an agreement to arbitrate in a foreign country or to apply foreign law does not transform an otherwise domestic commercial relationship into one involving a foreign state. *See Jones v. Sea Tow Services, Inc.,* 30 F.3d 360, 366 (2nd Cir.1994); *Reinholtz v. Retriever Marine Towing & Salvage,* 1993 WL 414719, at \*4 (S.D.Fla. 1993). Arbitration and choice-of-law clauses are created by the parties themselves; they do not represent an independent connection with a foreign country, and do not "infuse the parties' relationship with transnational elements of sufficient moment to invoke [federal] jurisdiction under the Convention." *Reinholtz,* 1993 WL 414719 \*5. The Court also is not persuaded that the employment agreement involves "property located abroad." Matabang was hired as a singer, and his obligations had nothing to do with property.

■ A somewhat closer point is whether Matabang's employment agreement involves "performance … abroad." Several illuminating court of appeals cases provide a framework for deciding what constitutes performance abroad. *See Freudensprung v. Offshore Technical Services, Inc.,* 379 F.3d 327, 340 (5th Cir.2004) (Convention applied between U.S. citizen and U.S. corporation where the employment contract called for performance in waters off the coast of Nigeria); *Lander Company, Inc. v. MMP Investments, Inc.,* 107 F.3d 476, 481 (7th Cir.1997) (Convention applied between two U.S. companies where performance of contract was in Poland); *Jones v. Sea Tow Services, Inc.,* 30 F.3d 360, 366 (2nd Cir.1994) (Convention did not apply where performance was on Long Island and the only foreign element was the arbitration clause choice of law provision).

Some district courts have considered whether job contracts envisage performance abroad. In *Millmaker v. Bruso,* 2008 WL 219551, at \*3 (S.D.Texas 2008), the court considered a consulting agreement between two U.S. citizens that called for the consultant to work on projects related to the "development of oil and natural gas reserves in West Africa and other countries." The job would "include significant travel outside of the United States to, among others, West Africa, Europe, and Asia," and the consultant was required to obtain "legal documents and permits necessary to allow [work] in Africa, Europe, Japan, or Asia, including a passport, valid work permit, and medical certificates." *Id.* The employer agreed to pay for "any non-domestic flight (traveling to or from the United States)" and "all costs of foreign travel/medical/evacuation insurance." *Id.* Finally, only two "Covered Projects" were even listed in the agreement: "the Sudan visit" and "OPL 229, Offshore Nigeria." The court concluded that, "this Consultant Agreement envisages performance abroad from its opening clause to its concluding exhibit." *Id.* (internal punctuation omitted).[5] Therefore, the arbitration agreement fell within the New York Convention and the case was removable under § 205 of the Convention Act.

The district court in *Ensco Offshore Co. v. Titan Marine LLC,* 370 F. Supp 2d 594 (S.D.Texas 2005), considered an arbitration clause in a contract between two U.S. citizens for the salvage of an oil rig 90 miles off the Louisiana coast in the Gulf of Mexico. Titan, the salvor, agreed to salvage the legs of the rig and deliver them to Texas for repair. Titan argued that the contract "envisaged performance …

---

**5.** Foreign performance was also written into the contract and explicitly part of the legal relationship in *Freudensprung.* There, the employment contract expressly incorporated the terms of "any Work Order" issued to the

employee. *Freudensprung,* 379 F.3d at 333. In Work Order No. 4, the employee agreed to work as a barge leaderman in West Africa. *Id.*

abroad" because the rig was in international waters, and because the contract anticipated that a British-flagged support vessel would be used for the operation. *Id.* at 596. However, the district court found these international aspects too insignificant to establish federal jurisdiction under the Convention Act, concluding that "Congress did not envision American companies with a dispute just off the Gulf Coast with eventual performance in Texas to be property, performance, or enforcement 'abroad.'" *Id.* at 600. Further, the *Ensco* court found no authority for the proposition that every "offshore" event connected to a contract is "abroad" for the purposes of the statute. "[T]he fact that the rig sat in international waters and would require work more than twelve miles off the coast of the United States," the court wrote, "is insufficient in and of itself to qualify this agreement under the exceptions outlined in § 202." *Id.* at 601. With respect to the British flag vessel, which was not a party to the contract, the court observed that, "as critical as [its] role may have been in the motivation of these two parties … the foreign element must involve the legal relationship in which the arbitration agreement arises." *Id.* The court held that the New York Convention did not apply.

The "legal relationship" in this case is defined by the Revue Show Performer Contract, which contains no references to performance abroad or any foreign state,

apart from the arbitration clause. Even the choice-of-law clause is territorially neutral, stating only that disputes will be governed by "the laws of the flag of the vessel on which [Matabang] is assigned at the time the cause of action accrues." Although the contract requires "[a]ll performers [to] provide an up to date Passport," the only travel mentioned in the contract is Matabang's domestic roundtrip flight from Los Angeles to Orlando, payable by Carnival. In reality, the legal relationship embodied in the Performer Contract presents only a superficial connection to the Bahamas, where the Sensation visits twice a week. So far as the contract is concerned, Matabang is assigned to work on a vessel, not a specific international itinerary.

Even assuming the Sensation spends 80–85% of the time "in the Bahamas, in Bahamian waters and sailing on the high seas," as estimated in the declaration of Carnival employee Carlos Estrada,[6] this does not necessarily equate with a "reasonable relation with one or more foreign states" under § 202. Time on the high seas, which undoubtably accounts for much of the 80–85% of the time Sensation supposedly spends outside the United States, is arguably not time "abroad." *See Ensco,* 370 F.Supp.2d at 601. The *Ensco* court's comments on this point are useful and consistent with the purpose of the jurisdictional requirements in the Convention Act.[7] So far as it appears, Matabang wasn't

---

6. Plaintiff disagrees with this estimation.

7. From the full context of § 202 and the New York Convention, it is clear that "performance abroad" is more than a simple geographic requirement meaning, for example, beyond the airspace or territorial waters of the United States. Such a formulaic interpretation would raise unnecessary questions about the international character of all manner of domestic legal relationships that incidentally touch upon extra-domestic spaces. In testimony before the Senate Foreign Relations Committee on February 13, 1970, Rich-

ard Kearney, the Chairman of the Secretary of State's Advisory Committee of Private International Law explained that, "We have included in section 202 a requirement that any case concerning an agreement or award solely between U.S. citizens is excluded unless there is some important foreign element involved, such as property located abroad, the performance of a contract in a foreign country, or a similar reasonable relation with one or more foreign states." Abroad appears to equate with a foreign state, not international water.

even required to set foot on Bahamian soil, and he performed while the boat was at sea. Mr. Estrada's estimation also fails to account for the time Matabang spent rehearsing in Florida, or for wet dock or dry dock time, during which Matabang "will not be entitled to compensation" and "may be signed off the assigned vessel [and], if so, will not be under Carnival's employ." Finally, even accepting the Sensation entered Bahamian territory as part of its weekly routine, the relevant § 202 "legal relationship" is the employment contract, which does not reasonably relate to a foreign state.

The fact that the Sensation is a Bahamian-flagged vessel does not change this conclusion. Section 202 of the Convention Act instructs courts to disregard the foreign corporate status of a U.S.-based company in deciding whether the relationship is international. 9 U.S.C. § 202. Carnival's Panamanian corporate status, therefore, does not introduce the requisite foreign element into the contract. This is based on the recognition that when both sides of a commercial transaction are closely connected to the same country, by virtue of citizenship or principal business location, the international character of their relationship is not obvious. In these situations, a company seeking to invoke the New York Convention must point to other international elements. *See Jones v. Sea Tow Services, Inc.*, 30 F.3d at 366 (foreign choice-of-law clause does not provide independent connection to a foreign state). The significance of the M/V Sensation's foreign flag, much like the significance of Carnival's foreign incorporation, is greatly diminished if by virtue of the vessel's home port in Florida. If the vessel itself were a corporation, it would be deemed a U.S. citizen.[8]

## III.

The Court is not attempting to draw a precise line where jurisdiction attaches in a federal court under the Convention Act, nor would it seem possible to do so. But the facts of this case fall outside the letter and spirit of the implementing legislation to the New York Convention. Carnival has not alleged a basis for federal jurisdiction other than the Convention Act. The notice of removal relies only on the allegation that the Court has original jurisdiction under 9 U.S.C. § 202, and that the case may be removed under 9 U.S.C. § 205, because it relates to an arbitration agreement falling under the New York Convention. The Court concludes, however, that the legal relationship between Carnival and Matabang does not fall under the New York Convention. The jurisdictional requirements of 9 U.S.C. § 202 have not been met, and, therefore, the case cannot be removed under 9 U.S.C. § 205.

Accordingly, it is hereby **ORDERED AND ADJUDGED:**

1. The defendant's motion to compel arbitration or, in the alternative, for dismissal, is DENIED;

2. The plaintiff's motion for remand is GRANTED; The clerk is instructed to remand this case to the Circuit Court of the Eleventh Judicial Circuit in Miami Dade County.

3. The plaintiff's request for attorney's fees for the defendant's improper removal of this case is DENIED, because the removal was not unreasonable;

8. The only reference to the Sensation in the contract is in Paragraph 1: "Carnival hereby engages [Matabang] as a Production Singer appearing on the Carnival Sensation of the Carnival Cruise Lines."

4. The defendant's motion to stay discovery pending the Court's ruling on the motion to compel is DENIED as moot.